Lott, Surr.
I think that the legacy to Edward MeGrarvey is not subject to the collateral inheritance tax. The-statute exempts the husband of a daughter. It is true the? wife of McGarvey died before the testator, but I think this does not affect the matter. The legislature may have had in view more than the benefit accruing to the wife of the legatee by this exemption. The children of a deceased daughter may have been, considered as favored by the-exemption from this tax of a legacy to tlieir father.
Note on Collateral Inheritance Tax Act.
! In Matter of McPherson (104 N. Y. 806) the collateral inheritance-tax act of 1888 (c. 483) was held not unconstitutional as an entirety, but the court intimate that there may be cases in which the act would, for constitutional reasons, be wholly inoperative, saying that the learned! brief submitted by Leonard G-. Hun, Esq., associate counsel for some of the appellants in that case, “ points out many imperfections in this act, and shows that there will be great embarrassment and difficulty in-executing the act in the cases of contingent remainders and expectant estates, and in some other cases.”
The last legislature (L. 1887, c. 713) amended the act of 1885 materially, providing a rule for the determination of the value of contingent or limited estates, and requiring notice of appraisement to be given to-persons known to have or claim an interest in the property (§ 13). But the main features of the original act are retained, and the substance of Mr. Hun’s brief, construing its provisions, follows here, omitting, however, passages relating to the questions thus settled by the decision and! amending act.
Although this act is very carelessly drawn, and the proper construction of some of its provisions is by no means easy to find, yet one thing is very apparent, and that is the intention of the legislature to impose upon all property passing by will or inheritance,. *235 and all interests therein whether in possession or expectancy, a tax of five dollars on every hundred dollars of the clear market value of such' property without regard to the nature of the estate, or to whether the interest acquired was a [present or a future one, or the remainder was vested or contingent; that the tax so imposed is to be collected from the legatee or devisee, or the heir-at-law and next of kin, before he has received or is even entitled to receive the legacy or devise or share, and' even before it can be known that he will ever receive it, while no provision is made for refunding the tax or any portion thereof, in case he should not in fact receive the property upon which it was imposed.
The material portions of the act have been copied from an act of Pennsylvania, as it was first passed (L. 1826, c. 72) with its original harsh and oppressive provisions, excluding therefrom the amendments (L. 1834, c. 62, § 34; L. 1849, c. 369, § 13; L. 1850, c. 147; L. 1855, c. 450) adopted by the same State many years ago to correct its former errors.
I have found in the legislation of no State, which has passed laws having collateral inheritances, any provision compelling legatees or' devisees to pay such a tax before they have received the property upon which the tax is based. The great care which is taken to avoid doing this, or if in any case payment is required before the absolute vesting of the title and the actual receipt of the property, the full and ample provision for refunding any amount improperly received, which is-shown by the English statute of successions (16 and 17 Vict. chap. 5) and the acts of Congress (chap. 173 of 1864, §§ 124 to 150, as amended by chap. 184 of 1866), imposing taxes on legacies and distributive shares and successions to real estate, might well have led the proposer"0 of the act of 1885 to adopt either of these carefully drawn statutes as a model on which to frame his own rather than the act of Pennsylvania, which had been found by its own legislature too oppressive to be-enforced.
The injustice of this attempt to tax as “ property ” mere chances of receiving property in the future, is shown in considering the effects of the attempt to impose and collect the tax upon contingent remainders and future estates or interests, which may never be actually received or enjoyed by any one, during the continuance of the prior estate.
A testator devises property to his wife for life so long as she shall remain unmarried, with remainder to A. if he be then living, and if be-be then dead to B., if he then have children living. Can the interest of either A. or B. be called “ property ” having a “ clear market value,” and is it possible to ascertain and determine the “ cash value ” of their' respective estates ?
A testator devises his property to a niece for life, with remainder' over to such of her children as may be living at the time of her death- *236 with power to her to apportion it among them by her will, and in • default of such appointment, the property to be divided, equally among the surviving children.
Is the possible estate to be possibly received by children to be pos- ■ sibly born “property ?”
Or suppose the niece to have one or more children living at the -time of the testator’s death, is the interest of this child or of those • children “ property,” upon which a tax can be imposed ?
A testator gives his property to his wife for the term of her natural 'life, with power to use such portion of the principal thereof as she may deem necessary for her comfortable support and maintenance, with remainder after death to B. if then living. What is the “cash value” of the “property” acquired by B ?
In all these cases the State, by claiming t'o be entitled to compel the ■payment of a tax upon the ground that the person then owns property • of a certain value assumes the burden of proving, clearly and indisputably, two facts, viz.: First, that he does then own the property ; and, second, that this property has then an actual market value. The burden assumed by the State is similar to that which is imposed upon persons seeking, in actions for breach of contracts, to recover as damages ■profits which it is claimed would have been received had the defendant fulfilled his contract. In these cases no recovery is allowed unless the fact that profits would have been recovered, if'the contract had been performed, is clearly established by the evidence laid before the court.
As it is impossible for the State to show that these contingent future estates will ever be received by the person from whom the tax is • to be collected, its claim to be entitled to recover a tax based upon •their present market value should be rejected within the rule requiring •the courts to disallow all claims for damages which are “ the result of other intervening causes,” or are “ so uncertain, contingent and imaginary as to be incapable of adequate proof.”
These cases (and many others might be given), show how impossible it is to fix and determine the “ cash value ” of an estate or interest at a time when neither the .persons who are to receive the same, nor the amount of property to be received by each, can be known, and should, it is submitted, convince the court that the act, in so far as it attempts -to tax such future contingent estates and interests, must be held incap.able of enforcement.
Assuming this to be a tax imposed upon property in proportion to its value, the rule, established by the act for determining the value of .the remainder given over after the expiration of a term for life or for years, is, as between the tenant for life and all remaindermen, and as between those holding vested remainders, and those whose estates are .contingent, unequal, oppressive and unjust.
*237 The rule laid down in section 2 is unjust and oppressive as to remainderman, as compared with the tenant for life or years, in that it arbitrarily assumes that the value of the property will be as great at' the time of the termination of the life estate, when only it can be actually received and enjoyed by the remainderman, as it was at the time of the death of the decedent. That this assumption is, in very many" cases, entirely unjustified by the facts is well known.
By establishing an arbitrary standard for determining the value of " the remainder instead of determining the amount of the tax by the actual value of the estate, as is. done in the case of the tenant for life, the legislature violated the rule as stated in Cooley on Taxation, page 2, section 4111, that “ the legislature cannot make the valuations of property for taxation.”
But the rule itself is unjust, and must necessarily and inevitably, in' each case in which it is applied, impose upon the remainderman a greater burden than is imposed upon the tenant, for life; in other words, the tenant for life pays a tax, the amount of which is determined by the actual value of his estate for life, while the remainderman is compelled to pay a tax upon an amount, determined by the rule itself, and which, in all cases, exceeds the actual value of his estate. This statement is based upon actual computations made from the tables showing the present values of annuities and estates to be received in the future, from which alone the values of the estates of the persons can be computed' with any degree of certainty. As the legislature has-failed to state the rate of interest which the tenant for life will be presumed to receive, or the tables to be used in computing the present" value of his estate,' I have for convenience used the American Experience Tables used by the insurance department of this State. In these' tables the mortality tables are, I believe, founded upon the actual experience of American companies, and interest is computed at four and one-half per cent. In one of the columns contained in these tables can-be found the present value of an annuity of one dollar, payable at the end of each year, for persons of different ages. By multiplying the numbers contained in this column by the number of dollars the annuitant is to receive in each year, we find the present value of an annuity of that amount.
Suppose a legacy of §10,000 is left to A., who is thirty-five years-old, for his life, with remainder to B., and assume that interest at the rate of four and one-half per cent, will be received by him upon it. Turning to the table we find that the present value of an annuity of one' dollar to be received by a person of the age of thirty-five years is expressed by the figures 15.409908. Multiplying this by §450, the interest which it is assumed A. will receive, we find that the value of A.’s estate for life is $6,934.45. Applying the rule laid down in the second- *238 .section of the act, and substracting the value of the life estate, §6,934.45, from the appraised value of the property, §10,000, we have §3,065.55 as the sum upon which the tax to be paid by the remaindermen is to be .based. Now the actual value of the estate of interest acquired by B. is the present value of a right to receive the sum of §10,000 upon the -death of B., and the cash value of B.’s estate would be a sum by paying which he could be assured of receiving this sum at that time. Now this assurance he can receive from any insurance company by taking .out a policy for that amount payable to him on the death of A. The amount which the company would require to be paid, as a single premium, would, however, include the expenses incurred in carrying on its business, commissions, etc., as well as the sum which would, if invested at four and one-half per cent., produce at the death of A. the sum required, and would not, therefore, express the actual value of B.’s interest. The tables above referred to will, however, furnish the desired information, as they contain a column showing the amount required to be paid as a single premium to insure a life, at any age, for the sum of one dollar, payable at the end of the year in which the life dies, without adding any amount for expenses.
It thus appears that a policy of insurance upon the life of A., thirty-five years old, for one dollar, would cost .293353, from which we find that a policy for §10,000 would cost §2,933.53, which is §132.02 less than its value as fixed by the rule, so that the State would demand as the tax §153.27, while only entitled to receive §146.65. A table showing the difference between the true value of the estate of the remainderman and the value as determined by the rule laid down in statute, upon the assumption that the legacy in each was $10,000, would show that in every instance this rule compels the remainderman to pay a tax upon a sum exceeding the actual market value of his estate, .and also that the amount of this unlawful excess increases constantly with the age of the tenant for life, so that although this excess, when the tenant for life is ten years old, is but §84.63, it amounts, when he is ninety years old, to §413.97.
As the rule adopted by the legislature- is plainly founded upon no principle, and as it must necessarily operate unjustly and oppressively in each and every instance in which it is applied, and as this evil could be easily and effectually cured by determining the value of the estate .of the remainderman by the same rule as that prescribed for determining the value of the estate of the tenant for life, that is, by ascertaining its actual value—the act should be declared void, as “an attempt to make exactions purely arbitrary, without any apportionment or appraisal, founded upon no rule of equity or justice,” which in effect deprive the owner of his property without due process of law. See Earl, J., in People v. Equitable Trust Co., 96 N. Y. 387