In the Matter of Estate of WILLIAM F. PROUT, Deceased.

*Supreme Court, First Department, General Term, July 9, 1889.*

1. *Collateral inheritance. Interest.*—The charge for interest on tax under chap. 483 of 1885, only begins from the expiration of the year following decedent's death.
    See note at end of case.
2. *Same.—Exemption.* The burden rests upon the party, claiming exemption, to show that the settlement of the estate has been delayed by necessary ligitation or other unavoidable cause, and that he is not in a condition to settle the estate or pay the tax,

Appeal from decree of the surrogate directing the payment of collateral inheritance tax.

*G. H. Crawford*, for appellant.

*B. F. Dos Passos*, for respondent.

VAN BRUNT, P. J.—The question involved upon this appeal seems to be whether, under the circumstances of this case, the estate in question should be compelled to pay interest upon the amount of the collateral inheritance tax for the year following the decedent's death. The question depends upon the construction to be given to sections 4 and 5, chapter 483 of the Laws of 1885.

Those sections are as follows:

Section 4. All taxes imposed by this act, unless otherwise herein provided for, shall be due and payable at the death of the decedent, and if the same are paid within one year, interest at the rate of six per cent per annum shall be charged and collected thereon, but if not so paid, interest at the rate of ten per cent per annum shall be charged and

collected from the time said tax accrued; provided that if said tax is paid within six months from accruing thereof, interest shall not be charged or collected thereon, but a discount of five per cent shall be allowed and deducted from said tax, and in all cases where the executors, administrators or trustees do not pay such tax within one year from the death of the decedent, they shall be required to give a bond in the form and to the effect prescribed in section 2 of this act for the payment of said tax, together with interest.

Section 5. The penalty of ten per cent per annum imposed by section 4 hereof for the non-payment of said tax shall not be charged where, in cases by reason of claims made upon the estate, necessary litigation or other unavoidable cause of delay, the estate of any decedent, or a part thereof, cannot be settled at the end of a year from the death of the decedent, and in such cases only six per cent per annum shall be charged upon the said tax from the expiration of such year until the cause of such delay is removed.

The right to the remission under section 5 does not seem to be disputed, the question being as to the amount of the remission, whether it shall be to the amount only of four per cent of the ten per cent imposed by section 4 in case the taxes are not paid within one year, or whether the law entitles the estate to a total remission of interest for the year following the decedent's death,

In the consideration of this question it seems to be necessary to advert to the nature of the claim for interest provided by the statute. A tax does not carry interest by implication of law as in the case of a debt, and in all systems of taxation, where default is made in the payment of the tax, interest is added by way of penalty for such default. And so, in the fourth section of the act in question, if the tax is paid within one year, interest at the rate of six per cent shall be charged and collected thereon, but if not so paid, interest at the rate of ten per cent shall be collected

and charged from the time such tax accrued, namely : from
the death of the decedent. Then follows a premium for
prompt payment, as is found in many of the tax laws,
whereby there is allowed in a case where the tax is paid
within six months a discount of five per cent, and, also, a
provision that no interest shall be charged.

The language of section 5 expressly recognizes the nature
of this interest which is charged because of the failure to
pay the tax within six months after the death of the de-
cedent. It provides that the penalty of ten per cent per
annum imposed by section 4 for the non-payment of said
tax shall not be charged, expressly recognizing the idea that
the whole amount of the interest is a penalty. It does not
refer to the addition of four per cent as being the penalty,
but it states that the penalty of ten per cent per annum im-
posed by section 4 shall not be charged in certain cases,
and then goes on and provides that in such cases only six
per cent per annum shall be charged from the expiration
of said year, i. e., the year following the death of the de-
cedent.

Now it seems to be clear, therefore, that if the penalty of
ten per cent imposed by section 4 is to be remitted (and it
is not claimed that this ten per cent is an addition to the
six per cent, but it is admitted that it embraces the whole
amount of the penalty) nothing remains, and the charge
for interest imposed by the subsequent language of section
5, providing that where a remission of the penalty of ten
per cent is permitted only six per cent shall be charged,
only begins from the expiration of the year following the
decedent's death.

It is urged that to agree to the ingenious argument ad-
vanced by the counsel for the appellant would be to pro-
mote delay and induce litigation so that the estate could
not be settled within the year. The protection in this re-
gard is perfect in the act, because the burden rests upon
the party claiming exemption to show that he comes with-

in the provisions of the act, namely : that the settlement of
the estate has been delayed by necessary litigation or other
unavoidable cause, and that, therefore, they are not in a
condition to settle the estate or pay the tax.

The learned surrogate seems to us to have fallen into an
error because he assumes that any portion of what is called
interest in the act is to be deemed otherwise than as a
penalty for non-payment. He says that it seems plain upon
reading the two sections together that the intention was to
relieve the estate from the payment of the penalty and not
from the interest. But as both were penalties the reason-
ing cannot apply, and it further cannot apply because the
act says that the estate shall be relieved from the whole
charge. and it calls the whole charge a penalty.

We think, therefore, that the estate was not chargeable
with the penalty during the first year, be it called interest
or by any other name.

The decree appealed from in this respect must be reversed,
with costs.

BARRETT, J.—The legislature has said in so many words,
that where an estate, for certain good reasons, cannot be
settled in one year from the death of the decedent, the in-
terest on the tax shall be but six per cent, and shall run from
the expiration of the year. The courts cannot extend this.
The law is thus written. Besides, it is a law creating a pen-
alty and should be strictly construed. And I think, too,
that is entirely homogeneous. If the tax is paid in six
months, there is a rebate of five per cent. If paid after the
six months, and within the year, interest at six per cent is
charged upon it. That provision is for a case where the es-
tate might be conveniently settled and the tax paid within
the year. In such a case, after the expiration of the year
the ten per cent penalty is imposed. If, however, it is a
case where the estate could not be so conveniently settled
for the reason specified in the act, neither the past interest

nor the ten per cent penalty is imposed, but simply six per cent from the end of the year until the cause of the delay is removed.   This is fair and reasonable, and I see no incongruity in the scheme. ˙ For these reasons, and for those given by the presiding justice, in whose opinion I fully concur, the order of the surrogate should be reversed in this particular.

DANIELS, J., concurs.

---

NOTE ON " COLLATERAL INHERITANCE TAX."

The following note was prepared and set up before the passage of chap. 399 of 1892, which repealed the various statutes formerly enacted on this subject. ,Many, if not all, of the authorities referred to in the note are applicable to the new law.   For this reason, it is retained in its present form.   The changes made will be noticed in a subsequent note.

*When take effect.*—Chap. 483 of 1885, imposing a tax upon gifts, legacies and collateral inheritances in certain cases, did not take effect until June 30, 1885, the twentieth day after the day of its final passage, as·certified by the secretary of state.   Matter of Howe, 48 Hun, 235.   Since the enactment of § 12, title 4, chap. 7, part 1 of the R. S., which provides that " every law, unless a different time shall be prescribed therein, shall commence and take effect throughout the state, on and not before the twentieth day after the day of the final passage, as certified by the secretary of state, all subsequent statutes, which do not prescribe in precise terms the exact time when they shall take effect, are controlled by this provision.   Id.   As the section usually inserted in acts directing that the act " shall take effect immediately," is not contained in the act of 1885, the court will not presume, from the language employed in the first section, viz., " after the passage of this act all property," etc., that the legislature intended this act to take effect immediately, but omitted to express its intention by the apt and familiar words used in other cases.   Id.   Yet the learned surrogate of the county of New York held, in Matter of Chardavoyne, 5 Dem. 466, that this statute took effect on its passage.

Where a testatrix died after the passage of the act of 1885, but before the expiration of twenty days, no tax was payable upon a legacy contained in the will.   Matter of Howe, 112 N. Y. 100.   The act was passed June 10, 1885, and declared that " after the passage of this act, all property which shall pass by will," etc., to any person, etc., other than the father or certain other excepted persons, " shall be subject to a tax of $5 on every $100 of the clear market value of such property, provided that an estate

which may be valued at a less sum than $500 shall not be subject to such duty or tax." In the absence of any other provision, this act would have taken effect from its date, that being the time when, according to the certificate of the secretary of state, the bill became a law. But the words "after the passage of this act," are no more significant than the word "hereafter;" and the general provision of the revised statute (§ 12, chap, 7, part 1, title 4, of 1, R. S. p. 157), "of the enactment and promulgation of statute and of the time from which they take effect," declares that, "every law, unless a different time shall be prescribed therein, shall commence and take effect, throughout the state, on and not before the twentieth day from the day after its final passage, as certified by the secretary of state."

The provisions of this section applied to the act of 1885. It follows that, as the act itself could not take effect within twenty days after its passage, or until the thirtieth day of June, the clause imposing the tax was necessarily inoperative until that time. It commenced, therefore, on the twentieth day after the passage, and as to property which passed by the will before that date, no tax was payable. Id.

*Constitutional.*—A tax can be constitutionally imposed under the act of 1885. Matter of McPherson, 104 N. Y. 306. Taxes upon legacies and inheritances were imposed in Rome two thousand years ago, and are now imposed in England and several of the continental countries of Europe, and in some of the states of this country. In 1864 a tax was imposed by the Federal government upon successions to real estate. And these acts, imposing such taxes, have frequently come before the courts and been uniformly upheld. Id.; Carpenter v. Com'rs, 17 How. 456; Schloey v. Rew, 23 Wall, 331; Clapp v. Sampson, 94 U. S. 589; Wright v. Blakeslee, 101 Id. 174; Mason v. Sargent, 104 Id. 689.

In the case of the State v. Dorsey, 6 Gill, 388, the bequest of freedom to a slave was held to be a legacy, within the meaning and operation of the Maryland act imposing taxes upon legacies, and the executor was compelled to pay it.

The legislature can impose a tax upon all sales of property, upon all income, upon all acquisitions of property, upon all business and upon all transfers. Matter of McPherson, *ante.* Taxes of a similar character were quite extensively imposed by the acts of Congress passed during the late civil war. If the succession tax is regarded as a tax upon property, it is free from constitutional objections, if it is equally imposed and properly apportioned upon all the property of the class to which it belongs. Id. A tax imposed, for the general welfare, upon a particular house, or the houses of a particular neighborhood, would be amenable to constitutional objection; but, if imposed upon all the houses in the state, it is a tax imposed upon all the property of that class, and is amenable to no objection. Id.

§ 20 of art. 3 of State Constitution is not applicable to this tax. Taxes may be imposed upon a great variety of objects. They may be direct or indirect, special or general, and they may be imposed in the shape of excise

and licenses, upon hawkers, peddlers, auctioneers, insurance agents, liquor dealers and others. And notwithstanding the general language of the section referred to, it was not intended to apply to every tax which the legislature could impose, and so it has been held. Id.

This section of the Constitution was intended to apply to the annual return taxes known at the time of the adoption of the constitution and imposed generally upon the entire property of the state. The policy embraced in the section has no reference to special taxes which may be collected in a variety of ways under general laws, such as auction duties, excise duties, taxes on business or particular trades, avocations or special classes of property. Id., Sun. Mut. Ins. Co. v. City of New York, 5 Sandf. 10; People v. Moring, 3 Abb. Ct. of App. Dec. 539; People v. F. Ass'n, 92 N. Y. 311.

The act does not confer powers upon surrogates' courts not authorized by and contrary to the Constitution. Matter of McPherson, *ante.* These courts have always had jurisdiction or the administration, adjustment and settlement of the estates of deceased persons, and the imposition and collection of this tax are simply incidents in the final settlement and adjustment of such estates, and are in no way foreign to the jurisdiction which has been generally exercised by such courts; certainly not so foreign as to make the act obnoxious to any constitutional objection. Id.

*Repeal.*—The act of 1887 does not purport to repeal the former act, except so far as it is inconsistent with the provisions of the latter act. Matter of Arnett, 49 Hun, 599. The reading of the new act is, in great part, identical with that of the former. Several of the amendments are merely verbal. Some of them relate to mere details of procedure. The only changes of substance are in the provisions for the exaction of interests on taxes unpaid after a certain time, and for the exemption of certain classes of persons from the operation of the law. Id. The latter amendment merely extends the exemption to adopted children.

From the whole frame and tenor of the new act, as well as from its introductory language, it was the intention of the legislature to amend, and not to repeal, the act of 1885. Outside the act itself, there is nothing in the history or character of the new scheme of taxation to suggest a purpose to grant exemption from its operation in the limited number of cases, in which the tax accrued under the original act and was uncollected at the time of the passage of the amendment. Id.

The law of 1885 was not so far abrogated by the amendment of 1887, as to relieve estates from liability for taxes which accrued under the former, and were not collected before the passage of the latter act. Id.

*Retroactive.*—Chap. 713 of 1887 amending chap. 483 of 1885, is not retroactive so as to govern in the assessment and collection of a tax on interest passing under the will of a decedent dying before it took effect.

Matter of Brooks, 6 Dem. 165. In this case, the deceased died in 1886 and it was held that the act of 1885, and not the act of 1887, applied to the taxation of her estate. Under the act of 1885, a tax was due immediately after the death of the testatrix. Id.

The act of 1887 has no retroactive effect. It is an original statute, or an amendment of an original statute, and the rule is settled that such statutes, or amendments thereto, have no retroactive force, unless the legislature so declares. Matter of Hendricks, Sur. Ct. Nov. 1888; People v. Supervisors, etc., 43 N. Y. 130; Sanford v. Bennett, 24 Id. 20; Benton v. Wickwire, 54 Id. 224. It was held in Matter of Miller, 110 N. Y. 216, that the language of this·act is clearly prospective and intended to effect only such wills, deeds or other instruments as become operative after its passage.

Legislature intended only to impose this tax upon the passing of property, that is, the devolution of title thereto by will, by the intestate laws of this state, by deed, grant, sale or gift, after the passage of the act. Matter of Hendricks, *ante*. The liability of an estate to this tax is to be ascertained by the law as it exists at the date of the death of the decedent. Id.

*Bonus.*—The collateral inheritance tax is not a tax upon property at all, but is, in substance and effect, a bonus exacted from a decedent's legatees, devisees and distributees, as the condition on which they are permitted to succeed to his estate. Matter of Howard, *ante*. The right of the owner of property to dispose of it by will, and of his kindred to take it in case of intestacy, depends solely upon municipal regulations. Id.

*When payable.*—Provisions of § 2, chap. 713 of 1887 require the appraisal to be made, immediately after the death of the decedent, at the fair market value of the property at the time of his death, and makes the tax immediately due and payable. To the same effect, are the provisions of § 4, for in it the taxes imposed are made due and payable at death. If they are not paid within eighteen months, interest thereon at the rate of ten per cent. may be charged and collected ; but, if they are paid promptly, or before the expiration of six months, a discount of five per cent. is allowed. Matter of Vassar, Ct. of App. Apr. 21, 1891.

These provisions are inconsistent with the claim that the tax is not to be assessed until the final accounting of the executors, and then is to be assessed upon the interest that has been collected upon the funds in their hands. This will not only deprive the legatees of the right to avail themselves of the discount of five per cent. but will subject them to the liability of being taxed upon interests thereafter accruing. Id.

The better and more reasonable construction of the statute is that the property, of which the person died seized or possessed, is subjected to the tax. The increase or interest, thereafter obtained by the executors is property of which the testator was not seized or possessed at the time of his death. The property should be appraised and the tax assessed as soon after death as practicable. The tax should then become immediately due and payable. And the provision for charging interest thereon, in case it is not paid, is in lieu of any increase or interest that may be derived from the estate by the executors. Id.

*What taxable.* $500 *limitation.*—The law is settled that the estate referred to in the collateral inheritance act relates, not to the aggregate estate of the deceased person, but to the legacy, distributive share, or other interest

subject to the tax. Matter of Sherwell, Sur. Ct. Aug. 20, 1890 ; Matter of Howe, *ante ;* Matter of Cager, 111 N. Y. 343.

It is also a well settled rule of construction of legislative acts imposing a special tax, that the burden is on the state to show that the facts bring any particular case within the terms of the statute. Id. The burden does not rest with the person sought to be taxed, to show that he falls clearly within the terms of a special exemption contained in the act, as in the case of the law imposing a general tax. Matter of Enston, 113 N. Y. 174.

In such case, the court is not subject to the same rigid and exact rules of construction which would apply in case an exemption was claimed from an act imposing a general burden upon all property. Such an intent of the legislative body must be found in the terms of the act as will make the tax an equal burden upon all members of the same class. Matter of Sherwell, *ante.*

It is the intention of the legislature, fairly deducible from the terms of the act, that all taxable estates should be exempt from taxation to the extent of $500. Matter of Sherwell, Sur. Ct. August 20, 1890.

Inheritance or testamentary gifts exceeding $500 are not exempt from taxation to the extent of $500. Matter of Sherwell, Ct. of App. Jan. 1891. It was the intention of the legislature that all taxable estates should be exempt from taxation to the extent of $500. The legislature is not controlled as to the extent of taxation of property within the state. In imposing a special tax upon all persons within a certain class, there is no violation of fundamental principles. Id. The tax is one which applies to all cases which are described in the act. Whether the object of the taxation is regarded as the property which passes, or the person who takes, is wholly immaterial. In the selection of its subjects for the raising of revenue for state uses, the legislature is not restricted. In such respects, it is sovereign, and is without other control than the limitations found in the fundamental law of the state. Id. In this act it has imposed a certain tax in every case, where there is a succession to, or devolution of, property of the value of $500 and upwards. The tax is made to apply to every estate which is bequeathed or devised to, or inherited by, the persons specified in the act, is equal, and, therefore, free from objection on legal grounds. Id. It is not correct to say that this act is one which grants exemption from taxation in certain cases. It defines the cases in which the taxing power is applied as new objects for taxation. If the inheritance or the testamentary gift amounts to $500 or more, then the act operates to create a liability in favor of the state to the extent mentioned; but if it is less, the act is wholly inoperative. Id.

*It seems,* the $500 limitation in the collateral inheritance act does not apply to the whole estate, of which the testator was seized or possessed, but only to so much of it as passes to certain designated persons; and, in determining whether a legatee or devisee is liable to taxation under said limitation, it is the value of the devise or legacy which is to be considered, not the value of the whole estate left by the testator. Matter of of Howe, *ante.* In the matter of taxation, it is simply the estate or share

of the beneficiary acquired through the will or the statute of distribution, which is to be valued and the duty estimated according to its value.  Id.

The act of 1885 was intended to authorize the imposition of tax upon devises to collateral relatives and strangers, only when the estate devised to them, individually, exceeded in value the sum of $500.  Matter of Cager, *ante.*  The tax is upon the individual, and can be imposed only when the particular interest devised exceeds in value the amount of the limitation provided by the statute.  The question is not affected by the amendment made to the law of 1885, by chap. 713 of 1887, exempting legacies to adopted children from the operation of law, where the tax was adjudicated and imposed by the surrogate before the amendment took affect.  Id.

The estate to be appraised under the provisions of § 13 of the act of 1885 are not the estates of deceased persons, but of those to whom they were given, or by whom they were inherited.  Matter of Hopkins, 6 Dem. 1.  The estates mentioned in the proviso, appended to § 1 of the same act, are the same.  Id.

Any estate devised, inherited, or bequeathed, or the subject of distribution to any person, which shall be valued at less than $500, is not subject to the tax provided by this act.  Id.

Whatever may be the extent of a testator's possessions, such of his bequests and devises as are of less value than $500 are not subject to tax. Matter of M'Cready, 6 Dem. 292.  The tax is not imposed upon a testator's entire estate as such, but, under certain circumstances, upon each and every passing or devolution of property ordered by his will in favor of each and every beneficiary not within the excepted classes.  The burden of this tax rests upon such beneficiary, and not upon the general estate.  Id.  The legislature intended that the exemption should apply, not to such general estate, but to the legacies and devises which, save for such exemption, would be subject to tax.  Id.

The valuation referred to in § 1 of the act is the valuation of appraisers, who are not called upon, under the act, to value any portion of a decedent's estate except such as passes to persons of the taxable class.  Id.

The court held in Matter of Sherwell, Sup. Ct., Dec. 8, 1890, that estates or legacies exceeding $500 are liable to tax, under chap. 713 of 1887, without any deduction or exemption.  All property which shall pass by will or by the intestate laws of this state to any person, with some specified exceptions, shall be subject to a tax ; but, if an estate be valued at less than $500 it shall not be subject to such tax.  In other words, if an estate is valued at less than $500, it is exempt from the tax entirely ; and, if it is valued at more than $500, it is all liable to the tax without any deduction or exemption.  Id.  It was not the intention of the legislature to exempt any portion of an estate from the tax, but to limit the estates upon which the tax would be imposed.  Id.

It has been finally settled, after many conflicting decisions, by the case of Thorne v. Garner, 113 N. Y. 198, that a legacy, not sooner payable and not given for support, will draw interest only from a year after the date of

the letters testamentary. Matter of Peck, Sur. Ct., March, 1890. Legacies of $500, payable at the end of one year, are not the fair market or cash value of $500 each. No business man will so regard them. Each will be of the value less the interest, until payable. If a testator was to bequeath the same sum to a person, not exempted from the tax, payable at the end of five years from decedent's death, it certainly would not, for the purposes of taxation, be assessed at a market or cash value of $500. Id.

Such legacies are not subject to taxation under the act, and the view expressed, in the Matter of Jones, 5 Dem. 30, to the effect that tax legacies require no appraisal, needs some modification. Id.

By § 1 of the collateral inheritance act, it is provided that an estate which may be valued at less sum than $500 shall not be subject to such duty or tax. Matter of Bird, Sur. Ct., 1890. The intent of the legislature is that all property of the value of not less than the sum of $500, at the date of decedent's death, passing by will or by our intestate law to collaterals, is subject to a tax of five per cent. thereon, which is declared by the act to be a lien upon the property to be taxed, and is a condition lawfully imposed by the legislature upon the devolution of the title to such property. Id.

*Debt.*—In the Matter of Rogers, Sur. Ct., 1890, the will of testator gave and bequeathed to an alleged creditor the benefit and proceeds of testator's membership in an insurance association, " as far as his interest may appear and be proved," and the balance to testator's wife. It was held that, whatever the creditor may receive, would be in payment of his debt, and is not, therefore, a gift, legacy or property which has passed by will and is not subject to the collateral inheritance tax.

Whether the creditor takes anything under the will, in this case, depends upon his being able to prove the debts. He takes nothing if there was no debt. So that, while he may be entitled to receive something by virtue of the will, he does not get it as a gift but as a payment. It may be that, unless he had been provided for in this way by the will he would not have been able to collect his debts, by reason of the terms of the contract of insurance ; still whatever he may get, even by virtue of the will is simply a payment of his debt. Id.

Though a bequest in satisfaction of a debt has been held to be within the definition of a legacy, the word "legacy" is not used in so broad a sense in this act. Id. A legacy naturally implies bounty or benevolence, and it has been held that, so far as legacy is applied to pay a debt, it is no legacy. Id.

*Commissions.*—Sec. 3 of the act makes legacies to executors or trustees in lieu of commissions, where the amount exceeds legal commissions, and would otherwise be taxable, subject to the tax on such excess. Matter of Jones, 19 Abb. N. C. 221.

*Husband.*—A legacy to the husband of the daughter of the testator was held, in Matter of Woolsey, 19 Abb. N. C. 232, not to be subject to taxation under chap. 483 of 1885, though the daughter died before the testator.

*Masses.*—A bequest to testatrix' executors in trust to be used for the-

payment of masses for the repose of her soul, and that of her husband, where such bequest is not included in the funeral expenses, was held in matter of Black, Sur. Ct. May, 1889, to be a separate and specific legacy, other than to or for the use, etc., of persons exempt from the collateral inheritance, and is, therefore, subject to the payment of such tax.

*Nephew, etc.*—The share of the children of a deceased brother of the decedent is subject to the inheritance tax. Matter of Brooks, 6 Dem. 165.

*Persons.*—The word "persons" preceding "whose estate," in § 13 of the act, applies only to the living, and the statutes clearly should be construed to mean "persons whose estates are inherited or are created by will, shall be subject to the payment of the tax." Matter of Jones, *ante*.

*Remainders, etc.*—Where the devisees and legatees are given so much of the estate of the testator as remains undisposed of by the widow during her lifetime, such estates in remainder are not capable of ascertainment and assessment for the tax during the lifetime of the testator's widow. Matter of Cager, 46 Hun, 657.

A remainder after a life estate, is subject to the tax, where the remainder is a vested one, there being a party in being who will take, should the life estate terminate, and where the value of the remainder is also ascertainable. Matter of Vinot, Sur. Ct., 1889.

A bequest, to be applied to the maintenance of a burial plot, etc., of decedent, is not subject to such tax. Matter of Vinot, Sur. Ct., 1889. It is a personal expenditure for the benefit of the decedent, and part of the funeral expenses, and therefore, exempt. Id.

The act in question, and particularly § 2, must be held and construed, as the future estates, to apply only to vested remainders. Matter of Lefever, 5 Dem. 184. A contingent remainder cannot be the "remainder" mentioned and intended in § 2, as liable to the tax, which, by another section, is due and payable at the death of the decedent. Id.

When the property bequeathed or devised actually vests, that is, "passes" to the collateral heir, then the tax becomes due and payable. Id. In the case of a vested remainder, the vesting takes place at the death of the decedent. In the case of a contingent remainder, the vesting takes place when the defeating contingency has been rendered impossible. Then, and not till then, does the interest pass to a collateral heir and become liable to the tax. Id.

When the present value of property, which is devised to one with a limitation over to others, upon the happening of some event which may or may not occur can be ascertained, a ground, upon which an approximate estimate of the value of the ultimate devise can be made, appears, and it may be made. But, when the question as to whether any property at all shall pass under the limitation over, and, if so, how much, depends upon the will of the first taker, there is no rule by which such value can be determined. Matter of Cager, *ante*. In the first mentioned case, the act enables a tax to be imposed and collected upon the ulterior devisees, through the medium of a bond to be given by the respective legatees, payable when they come into the possession of the devised property. Id., see

§ 2. chap. 483 of 1885. In the latter case, there is no basis upon which the value of the devise can be appraised, and no foundation for the imposition of any tax. In such case, the provision for the giving of a conditional bond is wholly inapplicable. Id.

In Matter of Johnson, 6 Dem. 146, it was held, where a will makes a bequest to one for life, with remainder over, and all the beneficiaries are in the class of those whose interests are subject to the tax imposed by § 1 of the act, the tax on the life estate is to be taken out of the income, and that on the remainder is to be deducted from the principal. The fact that the amount of the latter will thus be reduced, is no objection, since such reduction is lawfully made. Id. Where the interest of the life beneficiary is not taxable, the amount of the remainderman's tax is nevertheless lawfully payable out of the principal. Id.

*Trust.*—In the Matter of Farley, Sur. Ct., 1888, it was held that, when a testatrix bequeathes all her property to her executor individually, agreeing with him at the time of the execution of the will that the bequest shall be in trust for her brother, such trust is within the exemption of the statute.

*U. S. Bonds.*—The statute of 1885 cannot be construed as discriminating between the property of intestate decedents, and the property of testators as regards the liability of the one and the other to the payment of the tax imposed by that statute. Matter of Howard, 5 Dem. 483. It does not contemplate that the property of one, whose entire estate may consist of government bonds, shall be liable to tax in the event of his dying intestate, though he might have relieved his estate from that burden by bestowing such bonds in specific bequests to the objects of his bounty, but would nevertheless have been powerless to afford it such relief by the disposition of his estate in general pecuniary legacies. Id.

In the Matter of McPherson, *ante,* the precise matter under consideration was the question whether the collateral inheritance act was, or was not, obnoxious to the constitution of this state, and it was stated by the judge who pronounced the opinion of the court, that, for the solution of that question, it was entirely immaterial whether the act was to be regarded as imposing a tax upon property, or as imposing it upon the passing of property.

If the tax is, in a strict sense, a tax upon property, it may be claimed, with much force, that a decedent's estate, so far as it consists of United States bonds, is wholly exempt from taxation. Matter of Howard, *ante.* But if, on the other hand, the tax is imposed upon the "passing" of such decedent's property, the question whether the property consists wholly or partially of United States bonds, is wholly immaterial.

The legislature of this state had power to declare, at the time of the enactment of this law, that henceforth the personal estate of a resident decedent, in excess of the sum necessary for discharging his debts, should not all of it pass, as it would theretofore have passed, to his legatees or his next of kin; and that only ninety-five per cent thereof should so pass, and that the remaining five per cent should escheat to the state. This authority was in no way dependent upon the character of the decedent's.

property. Even though it should consist exclusively of government bonds, the state had power to direct that five per cent of the whole amount of such bonds should flow into its treasury. Id.

*Adoption.*—Adopted children are not among those excepted from the operation of chap. 483 of 1885. Warrimer *v.* People, 6 Dem. 211. § 1 of chap. 713 of 1887 is identical with the act of 1885 with the exception of some unimportant changes in grammatical construction, and except that it adds to the list of persons exempted from the tax " any child or children adopted as such in conformity with the laws of the state of New York, or any person to whom the deceased, for not less than ten years prior to his or her death, stood in the mutually acknowledged relation of a parent." The act closes with the usual clause repealing all acts and parts of acts inconsistent with its provisions.

The state, by the passage of this act, did not remit a tax already imposed upon an estate by acts of 1885, and surrender its fixed and vested rights therein. There is not a word in the act, which indicates any intention on the part of the legislature, that the statute should be retroactive in the effect. Id. In this case, decedent died after the act of 1885 and before the act of 1887 took effect, leaving a residuary legacy and devise to an adopted daughter, of more than $500; and it was held that the right of the state to a tax upon such legacy was fixed and vested and remained unaffected by the passage of the latter act.

The operation of the act of 1887, by exempting devises and bequests to an adopted child from taxation, did not affect liability for a tax which had been directed to be paid by an order of the surrogate, under the law of 1885, prior to the passage of the amendment of 1887. Kissam *v.* People, 6 Dem. 171; 47 Hun, 394. On the strength of Nash *v.* White's Bank, 105 N. Y. 243, the surrogate of Niagara County has decided that the effect of the act of 1887 was to defeat the collection of a tax, under the act of 1885, due before the passage of the former act, on a bequest to an adopted child.

To exempt an adopted son from the tax imposed by this act, it must be held that he is, within its terms, a child of the decedent. Matter of Miller, *ante.* The statute seems to include, by express words only such children as are born in lawful wedlock; and if, by construction, the word " children" may under some circumstances, be given a wide meaning, so as to bring in natural or illegitimate children, it can be carried no further Id. The persons actually described in the act are such as may, under the statutes of descent or distribution, be entitled to share in the estate of a decedent. Neither the intention of the legislature, as declared in the words used, nor the " fitness of the matter," permits an enlargement of the enumeration. Id. The statute also excepts from its operation "the wife or widow of a son and the husband of a daughter," thus adding to the list of relatives by blood, those of affinity by marriage. But there is no pretense of authority for adding a class of persons, who in no way are of kin to the decedent, and whose dependence upon him is the result of no marital contract or arrangement, but of mere choice. Id. The word " children," as used in the act of 1885, is not broad enough on its face to cover the case of

an adopted child. Such allowance will add a species of relationship not specified in the statute. Id.

The actual adoption by the decedent of the party as his son, his maintenance so long as decedent lived, and the latter's continued bounty secured by the terms of the will, do not bring him within the reason and equity of the statute. Id. The fact that such provision was affected by the statute of 1887, which amended the act of 1885 in this particular, must be regarded as a legislative declaration that the law did not, as originally passed embrace the provisions which the latter act supplies. Id.

In the Matter of Cager, *ante*, the general term said that, where a party dies between the two acts, and the necessary steps for the collection have not all been taken prior to the passage of the act of 1887, the legatee, who is an adopted child, is not liable for the tax. This is really only an *obiter dictum* of the court. The case went off and was decided upon another point. This dictum cannot be reconciled with the express provisions of the statute, which declare that the tax accrued at the date of the death of the decedent; that the appraiser is required to assess the fair market value of the property as of the date of death, and that interest shall run upon unpaid taxes from that date. Matter of Ryan, Sur. Ct., Nov., 1888. The date of the death of decedent seems, therefore, to be the pivot upon which the whole act turns ; and it does not seem reasonable that the mere fact that the machinery was not put in motion for the collection of the tax, until after the passage of the amendatory act, should operate to prevent the state from collecting its taxes. Id. The rights of the state accrued at the date of death, and no subsequent act can deprive the state of such right unless expressly so declared. Id.

In this last cited case, the only legatee stood for more than ten years in the mutually recognized relation of child to the decedent.

The latter died in 1886, before the passage of the amendatory act. No steps were taken for the collection of the tax prior to the amendment. And it was held that the amendment has no retroactive force, and that the legacy was subject to the tax.

The act of 1887 was passed June 25 of that year, and is entitled, " An act to amend chap. 483 of the Laws of 1885," etc., and declares that "it is amended so as to read as follows." It then repeats the act of 1885, with certain alterations, and, among others, adds, in the first section, the words of exception therein contained, " or any child or children adopted as such, in conformity with the laws of the State of New York, or any person to whom the deceased, for not less than ten years prior to his or her death, stood in the mutally acknowledged relation of a parent." Matter of Miller, *ante*.

In this case an order of a surrogate's court had been made, prior to the passage of the amendatory act, affirming an appraisement of the estate of a testatrix and assessing the amount of tax chargeable to her respective devisees and legatees under the act of 1885. Among them there was an adopted child. This tax had not been paid at the time the act of 1887 went into effect.

The act of 1887 does not, in such case, make any proceedings for the collection of the tax impossible, nor does it relate back to the passage of the act of 1885, and in effect nullify the proceedings which led to the order, and annul the order itself. Id.

The rule is considered settled in this state that neither original statutes nor amendments have any retroactive force, unless, in exceptional cases, the legislature so declares. This act contains no such declaration, and there is no reason to give the amendment any other force than would be due to the provisions of an independent statute. Id. The form of the amendment, by declaring that the act of 1885 is so amended as to read in a given way, is not unusual. Id. In Ely v. Holton, 15 N. Y. 595, the court said : " The portions of the amended sections, which are merely copied without change, are not to be considered as repealed and again enacted, but to have been the law all along, and the new part, or the changed portion, is not to be taken to have been the law at any time prior to the passage of the amended act."

Any other view will contravene the express language of the act of 1887, which declares that " it shall take effect immediately," that is, at the date of its passage, thereby excluding the idea that it should have any retrospective operation or effect. Id.

The law exempting persons who stand to the deceased, for not less than ten years prior to his death in the mutually acknowledged relation of child, was not passed until 1887. See chap. 713. Matter of Kemeys, 56 Hun, 117.

Where the right to the tax vested under the act of 1885, such vested right is not taken away by the act of 1887. In such case, there can be no good reason why such vested right shall not be enforced after the amendatory act, as well as before. Id. This was clearly recognized by the legislature in the passage of the act of 1889. Chap. 479 of that year provides as follows: § 1. " § 25 of chap. 713, of 1877 entitled ' An act to amend chap. 483 of 1885, entitled An act to tax gifts, legacies and collateral inheritances in certain cases,' is hereby amended so as to read as follows :

" § 25. All acts, and parts of acts, inconsistent with the provisions of this act are hereby repealed ; but this act shall apply to all estates of deceased persons where no assessment of the tax has been made, to which such estate, or estates, are liable under the provisions of the foregoing act."

This amendment only went into effect on the 14th day of June, 1889, and is inapplicable to any prior order, and will not disturb its force or effect. Matter of Kemeys, ante.

The law of 1885 taxed the collateral inheritance of adopted children, while the law of 1887 exempts them. In this particular, the law of 1885 is in conflict and is, therefore, repealed. Matter of Cager, ante.

It was the design of chap. 713 of 1887, amending chap. 483 of 1885, to impose a burden upon all property which shall pass by will or by the intestate laws of this state to any person or persons or bodies politic or corporate other than to or for the use of certain persons, among whom are

adopted children. Matter of Butler, 58 Hun, 400. The intention of the legislature to exempt adopted children from the operation of the law is plainly manifested.

This statute does not require the proceedings for adoption to be under the laws of this state, or within this state, but to be in conformity with them, to be like them, and to correspond in character and manner with them, wherever they are conducted. Id.

It is sufficient if the deceased stood in the mutually acknowleged relation of a parent to the child for not less than ten years prior to his or her death. Id. In this case, the child, from his earliest recollections, believed the testator to be his father, recognized him as such and knew no other, and the testator took him to his home as a child and treated him in all respects as a son. Their relations were parental and filial, and their entire conduct was a mutual acknowledgment of their relation. Since he was treated as a son and was obedient to his foster father, and dependent upon him, the statute required no higher proof of mutual acknowledgment. Id. The word "mutual" in this statute has no abstruse signification. It means and requires reciprocity of action. Correlation and interdependence find their best illustration and application in the relations existing between parents and children, which are always mutual. Id.

The legacy to the child of an adopted child is not exempt from the collateral inheritance tax. Matter of Bird, Sur. Ct., July 26, 1890. The statute is very exclusive in stating the classes that are exempt, and expressly declared that a person adopted, or who has stood for more than ten years in the mutually acknowledged relationship of a child, is exempted, not the descendant of such person. Id.

A step-parent does not necessarily stand in the relation of a parent, within the meaning of this act, to step-children. Whether they do or not, depends on the circumstances of each case. Matter of Capron, Sur. Ct., 1890.

In order to constitute this relation, some time during the continuance of the intercourse between the persons there should be a period of dependence on the part of the younger, a time when the latter requires and receives parental care, though not necessarily a dependence for support and maintenance. This relation must begin in youth, though not of necessity, during legal minority. It should not be confounded with relations which, growing out of mutual needs or wishes, have resulted in warmest friendships and sometimes in forming a household, but one in which the parental element is wanting. Id. It may continue between persons, who have come by force of circumstances to occupy that relation, even after they have discontinued living together. Id. In the case just cited, the testatrix was held not to stand in the relation of a parent to the oldest of the four legatees, who had married and left home before her father's marriage, but that she did occupy such relation toward the other three legatees.

There are three ways, outside of the marital relations, by which, for the purpose of this statute, the parental relation may be established. 1. By adoption, under chap. 830 of 1873, and the amendments thereto, whereby

an adult person takes a minor into the relation of a child, and acquires the right, and incurs the responsibilities, of a parent in respect to such minor. Under this law, the child assumes the name of the person adopting it, and becomes his or her legal heir.    Matter of Spencer, Sur. Ct. Jan., 1889.

2. Where the adult, by his conduct and relations to a minor, stands in *loco parentis* to him, and thereby becomes liable to the rights, and subject to the liabilities, of an actual parent. In each of these two cases, as well as in the case of an actual parent, it is their duty to maintain, educate and protect the child during its minority.    Id.

3. Where a person of the age of twenty-one years and upwards, by agreement or at the request of an adult, becomes a member of his family, with the purpose of having the relation of parent and child exist between them.    Id.    To accomplish this, names have sometimes been changed by act of the legislature, sometimes by order of the court, and sometimes the parties commence their relations without legal ceremony.

From the fact that the law does not require the relation to commence during the minority of the child, it is evident that it was intended to include all cases, where that relation has existed for ten years prior to death, without reference to the period of life at which the acknowledged relation of parent and child commenced.    Id.

In this class of cases, " to acknowledge " means to admit or recognize the existence of parental relations.    This may be done by agreements in writing, or by verbal declarations and statements in public, or to each other, or in some special manner; or the life, acts and conduct of the parties may be of themselves satisfactory and legal evidence of that acknowledgment which the law requires.    The law in question does not suggest the character of the proof necessary to be furnished.    If the evidence conclusively shows that the parties understood that their relations were parental and filial, and they thus lived together in this belief, discharging their duties and obligations to each other upon the theory that such relations existed, such manner of life is a mutual acknowledgment of the relations which each sustains to the other.    The intent, with which an act is done may be inferred from the act itself, and from its results.

*Corporations.*—Under the provisions of the collateral inheritance act the societies, corporations and institutions, exempted by law from taxation, are excepted from the provisions of the act.    Matter of Vassar, Ct. of App, Apr. 21, 1891.    They do not refer only to those bodies which enjoy complete immunity from taxation as to all property which they now have or of which they may at any time become possessed, even in excess of the statutory limits.    Id.    Such construction of the statute will practically nullify the provision and render exemption from taxation, contained therein, of no avail.    It will subject every, or nearly every, charitable institution in the land to the payment of the tax.    It has always been the policy of the government to limit the power of charitable corporations to take and hold property.    Under the general act, such corporations were permitted to take and hold real estate for the purposes of their incorporation and for no other purpose, to an amount not exceeding the sum of $50,000

in value, and personal property for like purpose and amount; but the clear, annual income of such real and personal property shall not exceed the sum of $10,000. See chap. 319 of 1848. Various amendments have, from time to time, increased these amounts. See chap. 649 of 1872; chap. 191 of 1889; chap. 553 of 1890.

This policy has been generally adhered to in the special acts incorporating societies of this character, and, in nearly every instance, limitations and restrictions are incorporated in the provisions of the act. Matter of Vassar, *ante*. The act of 1890 embraces all such charitable corporations, whether organized under general law or special acts. They may now lawfully take $3,000,000, a sum largely in excess of the amount, which was before permitted, and which, under former acts, would not have been exempt. These corporations, if exempt either under general laws or special acts, are generally exempt to the extent that they are empowered to take and hold. If they are liable to taxation, it must be for other and additional property of which they have become possessed.

Under the act of 1890, the personal property of charitable corporations is exempt. Id. Their real estate is not, unless it is exempt under existing laws. It provides that the provisions of the collateral inheritance act shall not apply thereto, nor to any gifts to any such corporations, by grant, bequest or otherwise.

An hospital is exempt to the extent of its capacity to take and hold property. Id. Only the personal property, which is used for the purpose of poor-houses, alms-houses, houses of industry and every house belonging to a company incorporated for the reformation of offenders or to improve the moral condition of seamen, are exempt, so that as to other personal property it will still be liable to taxation, and, therefore, complete immunity from taxation is not provided.

It was not intended that the state should impose and collect a collateral inheritance tax upon a bequest of bedding to an alms-house for the use of the inmates. Id.; Matter of Herr, 55 Hun. 167; Matter of Curtis, Sur. Ct., May, 1889; Matter of Forrester, Sup. Ct. Dec., 1890; Ass'n, etc., *v.* Mayor, etc., 104 N. Y. 581.

The taxes imposed by this act are special and not general. Matter of McPherson, *ante*.

The rule is that special tax laws are to be construed strictly against the government and favorably to the tax payer. A citizen cannot be subjected to special burdens without clear warrant of law. Matter of Vassar, *ante* ; Matter of Enston, *ante*.

The fact that a home for aged men charges an entrance fee for its inmates does not operate to deprive it of the exemption from taxation as an alms-house, to which it would otherwise be entitled. Matter of Vassar, *ante*.

In this case, the home was founded, incorporated, endowed and, so far, has been substantially maintained by charity. Its object is the support of the aged and indigent who are unable to support themselves. It possesses no elements of private or corporate gain, and whatever income it may

derive is devoted to the charity for which it was incorporated. Philadelphia *v.* Women's Christian Association, 125 Penn. St. 572; County of Northhampton *v.* La Fayette College, 128 Id. 132; Gooch *v.* Ass'n, etc., 109 Mass. 558, McDonald *v.* Mass. Gen. Hos., 120 Id. 432; Temple Grove Sem. *v.* Cramer, 98 N. Y. 121. A different conclusion has been reached by the surrogate in New York, and by the general term of the first department. Matter of Keech, Sur. Ct., June, 1889; aff'd, Sup. Ct., June, 1890; Matter of Lennox, Sur. Ct., April, 1890; Matter of Vanderbilt, Sur. Ct., April, 1890.

It is the policy of the state government to foster and encourage charitable institutions of the character of the one under consideration in the Matter of Vassar, *ante*, and to regard it as an alms-house, and, as such, exempt from taxation, where it operates to relieve the public from the support of the poor and indigent which it otherwise would have to assume. Id.

In the Matter of Neale, Sup. Ct. July 18, 1890, it was held that the Faith Home for Incurables was exempt, as an alms-house, from the collateral inheritance tax. The object of the association is to maintain respectable homeless persons, afflicted with incurable diseases. The inmates are such persons who are without home, money or friends able to support them, who are not acceptable in hospitals on account of some incurable disease. The property of the society consists of a house and lot in the city of Brooklyn, the furniture in the house and a fund of $2,000, which has been given it in trust, the interest to be used for the maintenance of the inmates of the home. The exemption, in this case, was placed upon the ground that it was an alms-house. Id.

In Matter of Keech, Sup. Ct., June 6, 1890, it was held that the Baptist Home Society of the city of New York was not an alms-house in such a sense as to be exempt from the collateral inheritance tax. The provision, under which immunity was claimed in this case, is found in subd. 4, § 4, title 1. chap. 13, part 1 of R. S. p. 1083, which relieves from taxation " every poor-house, alms-house, home of industry, and every house belonging to a company incorporated for the reformation of offenders, or improving the moral condition of seamen, and the real and personal property used for such purposes belonging to, or connected with, the same."

In this case the association, not only does not support its inmates gratuitously, but almost invariably ·demands the payment of a substantial entrance, fee from each applicant for admission, and a transfer of all property then owned, or subsequently acquired, by such applicant, and express provision is made for the reception of boarders who shall give satisfactory security for the regular payment of their board.

The good offices of the society are not, therefore, rendered wholly gratuitously; payments must be made as a rule to enjoy its benefits, and consequently it does not come under the definition of an alms-house. Id.

In the case of People *ex rel.* Seminary, etc., *v.* Barber, 42 Hun, 27 ; aff'd, 106 N. Y. 669, it was held that a farm attached to a seminary of learning,

all of whose products were used upon the premises to supply those engaged as teachers students and servants, was exempt from taxation. This exemption arose from the statute exempting from taxation every building erected for the use of a college, incorporated academy or other seminary of learning, and the several lots wheron such buildings so used are situated, etc.

This exemption does not depend upon the institution being open to the poor. The only condition being that its buildings shall be used for the purposes named in the statute. Fees may be charged sufficient to pay its expenses, without forfeiting its claim to exemption.

But in the Matter of Keech, *ante*, the right to exemption rests upon a different basis, viz., that the association entitled to exemption is performing a work of charity and is taking upon its own shoulders a portion of the burden that would otherwise full upon the public.

In case of Sherill *v*. Christ Church, etc., 3 Silvernail's N. Y. Rep. 55, testator directed his executors, after the death of his wife, to pay to Christ Church of Poughkeepsie $10,000 toward the " building of a new church or the renovation of the present one." It was held that a bequest to the church to be used for the building or renovation of a church edifice cannot be treated as real estate, but the interest of the church therein is personal property to be applied to the purpose mentioned in the will. By no rule of equitable conversion can it become real estate, until it has been actually invested in the real estate as directed.

At the time of the death of the testator, in this case, there was no law which exempted a church society from taxation. The only exemption that could be claimed was an exemption of any building used by it for public worship, and that did not constitute a general exception of the church from taxation, within the meaning of the collateral inheritance tax. Id. Catlin *v*. Trustees, etc., 113 N. Y. 133.

The church in this case was liable to pay such tax, unless it could claim exemption under chap. 398 of 1890. Id. This act provides that the personal estate of certain corporations, among which are religious corporations, shall be exempt from taxation, and that the collateral inheritance act shall not apply to them. The state can, by an act of the legislature duly passed, release taxes already due. But legislative acts are always construed as prospective in their operation, unless, by their plain language, it can be seen that it was the legislative intention that they should have retroactive effect. This act is clearly prospective in its operation, and applies only to the future. Taxes, which become due and payable before its passage, may still be enforced in the manner provided in the collateral inheritance tax. Id.

Where inmates of charitable institutions are required to pay for any of the benefits received, the institution is not an alms-house. Matter of Lenox, *ante*. It is not wholly appropriated for the poor, and is, therefore, subjected to the tax.

Where property, real and personal, of a library corporation is declared to be exempt from taxation in the same manner as that of the other incorpo-

rated public libraries of this state, it is not subject to the tax. Matter of Lenox, *ante*.

New York Ass'n for Improving the Condition of the Poor was held, in Matter of Lenox, *ante*, to be exempt. It is a pure charity dispensing its benefits without any charge whatever. It has no house where the poor are lodged, but this does not take it out of the alms-house class. It keeps a place where money is disbursed to the needy, and, while it does not furnish lodgings, it provides the means therefor. For these reasons, the surrogate held it to be exempt.

In the Matter of Herr, *ante*, it was held that the Brooklyn Home for Consumptives was an alms-house. It is a charitable institution, the inmates and beneficiaries of which are wholly maintained and supported by charity. The society, not only cares for, and supports, the inmates thereof and furnishes medical attendance while living, but at its own expense buries the dead who die in the institution. The court held it exempt from the collateral inheritance tax.

In the Matter of Lenox, 58 Hun, 116, it was held that neither the Board of Foreign Missions, nor the Board of Home Missions, is exempt from taxation, either under its charter, or the provisions of the Revised Statutes, and that a legacy to either of them is, therefore, liable to the collateral inheritance tax.

The first section of the act has exempted certain devises and bequests from the payment of the collateral inheritance tax made payable by its provisions. Among these are, "The societies, corporations and institutions now exempted by law from taxation." And if a corporation is not exempt from taxation, then its legacy is liable to pay its tax. Id.

A religious society, incorporated under the general act of 1813, and a college not specially exempted from taxation by its charter, or some special act, are included in the provision of chap. 713 of 1887, which subjects to the tax imposed by the act all property which shall pass by will to any "body, politic or corporate . . . other than to . . . the societies, corporations and institutions now exempted by law from taxation." Catlin *v.* Trustees, etc., *ante*.

The words "now exempted by law," in this act, refer to exemption under our laws, and exemption of a foreign corporations from taxation, under the laws of the jurisdiction of origin, does not withdraw it from the operation of the inheritance tax law. Id. There is certainly no comity, which requires that colleges, existing under the laws of other states, should be placed in a more favorable situation, under the act of 1887, than colleges organized under the laws of this state.

A college, incorporated and located in another state, is therefore, liable to taxation upon a legacy, given by the will of a resident of the state, though, by its charter, it is exempted from taxation. Id.

Where moneys bequeathed by will, after it is obtained, and while it is in the possession of the institution to which it is given, is free from taxation, it is also exempt from the collateral inheritance tax. Matter of Herr, *ante*.

Note on " Collateral Inheritance Tax."·

A corporation, which is a house of industry, though not exempt from taxation by its charter, is entitled, under subd. 4, § 4, chap. 13, title 1, part 1 of R. S., to an exemption from taxation of personal property invested for its support and maintenance, and such exemption is not restricted to the furniture of the home or to articles contained therein.   Id.

All property which now passes by will, or by the intestate laws of this state, from any person who died seized or possessed of the same, while a resident of this state, to any person, or persons, or to any body politic or corporate, other than to or for the use of the societies, corporations and institution now exempted by law from taxation, is subject to a tax of $5 on every $100 of the value of such property.   Matter of Vassar, 58 Hun, 378; § 1, chap. 713 of 1887, amending chap. 483 of 1885.

The tendency has been to hold that the societies, corporations and institutions exempted from the operation of this act, are those bodies only which enjoy complete immunity from taxation as to all their property.   Id. In this case, it was held that there must be an entire freedom from general taxation to entitle such institution to exemption from taxation under this statute, and that partial relief from taxation was insufficient.

In Ass'n, etc., v. Mayor, etc., ante, the court held an alms-house to be a house appropriated for the poor, and it might be a private corporation.   In this case, it was a pure charity, where the orphans were boarded, clothed and educated gratuitously and no charge was made for admission, and they were at no expense whatever.   But in the Matter of Keech, ante, an admission fee is charged the applicant or paid in bulk by the patron, or, in a few isolated cases, the applicant is admitted free.   Each one, who is accepted, must make a will giving to the home all the property he has or may have.   Though the institution is a great charity, it is limited in its scope and cannot fairly claim to be an alms-house under the definition of a " pure charity," where everything is provided gratuitously.   Under such circumstances, it does not come within the exemption as laid down in Catlin v. Trustees, etc., ante, and is, therefore, subject to the tax.   Id.

In the Matter of Kavanagh, Sur. Ct. 1889, a bequest of $500 was made to the Missionary Congregation of St. Paul the Apostle, in the city of New York, known as the Paulist Fathers.   There was no proof of any special exemption, either by charter or any special act, of the beneficiaries from the collateral inheritance tax.   Nor was any provision of chap. 13 of R. S., nor of any amendment thereof, shown to take this legacy out of the general rule declared in § 1 of the collateral inheritance act.   And it was held that said legacy was subject to the collateral inheritance tax.

A charitable institution, wholly dependent upon voluntary contributions and performing a work of pure charity, and taking upon its shoulders the burden that would otherwise fall on the public, was held, in Matter of Curtis, ante, an alms-house within § 4, 1 R. S. 388, and to be, therefore, exempt from the collateral inheritance tax.   All of its real and personal property, whether such property consists of money, household furniture or public or corporate stocks, used for the purposes for which it was founded, or connected with such use, are covered by the statutory exemption.   Id.

It is only where it ceases to be used in such connections that it becomes subject to taxation.

It is difficult to discover any distinction, in principle, between institutions supporting, by alms, colored or white orphans, indigent foreigners, whether well or ill, and sick and disabled indigent persons. Id. They all equally belong to the alms-house class. There are undoubtedly charitable corporations which may not be comprehended within the definition of " alms-house."

The word " hospital " is more commonly applied to a building founded through charity, where the sick and disabled may be treated solely at their own expense, or at the sole expense of the corporation, which receives only indigent patients. In the latter case it has all the attributes of an alms-house, but in either case it becomes a charitable institution. Matter of Curtis, Id. It would seem a strange anomaly in legislative justice to levy a tax upon contributions voluntarily made, which shield the people from taxation. Id.

Bequests to the Society for the Prevention of Cruelty to Animals were held, in the Matter of Keith and Daily, Sur. Ct. 1889, to be subject to the tax imposed upon legacies by the act of 1885.

Certain charitable institutions are exempt, but such institutions relate to human beings, and it is for their benefit and advantage that such institutions are formed, fostered and encouraged by the state by the relief from taxation. Id.

The fact that a portion of the property owned by the society is exempt from taxation, is immaterial. This tax is imposed upon the passing of property, a succession tax, and though the property may become exempt from general taxation after having passed, the legislature has an undoubted right to tax it in transitu, and intended evidently to do so. Id.

A legacy to a college, incorporated in another state, is not exempt from taxation under the collateral inheritance act, though, by the statute of that state its property is exempted from taxation. Matter of McCoskey, 22 Abb. N. C. 20. The provision of the act includes all corporations named specifically, or by general description, in our statutes as exempted, but does not relate to a foreign corporation, incorporated by the act of the legislature of another state. Id.

A foreign corporation cannot claim, of course, to be exempted from taxation by express provision of our laws. It is only such corporations as are the creatures of our laws, created by them and subject thereto, where even the repeal of their charters is possible by our legislature, and their very life dependent upon the will and pleasure of the law-making power, that are intended to be relieved from the payment of this tax. It is such corporations that are exempted. Id.

A legacy to a society incorporated in this state, for the purpose of establishing and maintaining one or more houses for such indigent, aged persons and indigent orphans and half-orphan children, and other children left destitute, as it may receive under its care and to educate such children, etc., was held in Matter of Hunter, ante, to be exempt from the collateral inheritance tax. 13

The language used by the act of 1885 excludes from taxation legacies to corporations "now exempted by law from taxation." This language shows that the intention of the legislature was to exclude from taxation, under this act, such corporations as, by some specific provisions of law, are exempted from taxation, or whose property is so exempt. Matter of Hunter, *ante*. The words " exempted by law from taxation " look to some actual provision of the law, not to the mere absence of any provision; and, it cannot be claimed that, because the law does not specifically tax a corporation, therefore, that corporation is exempted by law from taxation. Id.

There are no corporations which, by specific provisions of law, are exempted from taxation, but the property of certain corporations, is by specific provisions of law, so exempted. The society, corporations and institutions now exempted by law from taxation,. referred to in the first section of the act of 1885, are the societies, corporations and institutions, whose property is exempted by law from taxation. Id.

In this case, the corporation was organized to establish and maintain houses for the maintenance of indigent, aged persons and the support and education of destitute children, and hospitals and dispensaries for ·the shelter and relief of the infirm, sick and needy. It is maintained by voluntary gifts, has no capital stock and carries on no business.

In the Matter of Forrester, 58 Hun, 611, the original charter of the Methodist Episcopal Church Home contained no provision in relation to taxation. The amendment of chap. 81 of 1878 gave it greater property rights and exempted it from taxation on its real estate. And it was held that this clearly excluded the personal property from exemption, and that, therefore, a bequest to it was not exempt under the collateral inheritance act.

Where there has been a general enactment covering the subject in general, in terms which include the particular case, and there is a subsequent enactment which makes a rule for that particular case, the latter will be held to be all that the legislature, at least, meant for the regulation of that case. Id.; Excelsior Pet. Co. *v.* Lacy, 63 N. Y. 426. Taxation is the rule, and one claiming exemption must find plain warrant for it in the law. Doubtful language will not suffice. Matter of Forrester, *ante*.

*Lineal descendants.*—The title of chap. 483, of 1885, specifies its purpose to be, to tax gifts, legacies and collateral inheritances in certain cases. By the first section, all property, which passes by will or under the laws governing the descent and distribution of real and personal property in cases of intestacy to any person or persons or corporations " other than those to and for the use of father, mother, husband, wife, children, brother and sister and lineal descendants born in lawful wedlock, and the wife or widow of a son, and the husband of a daughter, and the societies, corporations and institutions now exempted by law from taxation " are made subject to tax. The claim that lineal descendants refers to lineal descendants of nephews and nieces of a testatrix vests solely upon the punctuation. If the construction is limited strictly to it, a child's child will be excluded, and the nephew's child included among those who take property free from

the tax. Matter of Miller, 45 Hun, 244. Neither the grammatical construction of a sentence, nor the punctuation, controls the reading when from the whole act, the meaning is plain. The term " lineal descendants " only includes the direct descendants of the testator or intestate. The act would fail if the lineal descendants of father, mother, wife, brother and sister were among the excepted instances, who had no descent from the decedent. Id. By the second section, the act provides for remainders which were to pass to the class, or classes, not excepted after a life estate to these who could take free from tax. The persons who could take the life estate without tax, under this section, are father, mother, husband, wife, children, brother and sister, the widow of a son or a lineal descendant. The classes of those who can take the life estate are the same as those who take without a tax, if an absolute property is given them by the first section. By the ninth section of the act, the classes, who are not subject to tax, are again stated as follows : Father, mother, husband, wife, lawful issue, wife or widow of a son, or husband of a daughter. In this section, there is no warrant to class the children of brothers and sisters among the lineal descendants of the deceased. The term " lineal descendants " must, therefore, be limited to children of the decedent, and to their children and children's children, and not be held to include the children of decedent's brothers and sisters. Id.

The words " lineal descendants " are restricted to those of the ancestor. Matter of Smith, 5 Dem. 90. The section refers to the relation of all the persons named to the ancestor. The same words are used again in the second section to the act, and provision is made for the taxation of a remainder, when left " to a collateral heir of the decedent or to a stranger in blood." Id.

The word " estate," in the exemption clause, refers to the share coming to the person, society or corporation liable to taxation. Id.

The phrase " lineal descendants " includes only those who are lineal descendants of the testator or intestate. Matter of Jones, *ante*.

*Non-residents.*—§ 1 of the Act of 1885, reads as follows: After the passage of this act, all property which shall pass by will or by the intestate laws of the state, from any person who may die seized or possessed of the same while being a resident of the state, or which property shall be within this state, or any part of such property, or any interest therein, or income therefrom, transferred by deed, grant, sale or gift made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor to any person or persons, or to any body politic or corporate in trust or otherwise, or by reason whereof any person, or body politic or corporate shall become beneficially entitled, in possession or expectancy, to any property or the income thereof other than to or for the use of father, mother, husband, wife, children, brother and sister and lineal descendants born in lawful wedlock, and the wife or widow of a son, and the husband of a daughter, and the societies, corporations and institutions now exempted by law from taxation, shall be, and are subject to a tax of five dollars on every hundred dollars of the clear market-value of such prop-

erty, and at and after the same rate for any less amount, to be paid to the treasurer of the proper county, and in the city and county of New York to the comptroller thereof, for the use of the state, and all administrators, executors and trustees shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed; provided that an estate which may be valued at a less sum than five hundred dollars shall not be subject to said duty or tax.

The tax imposed by this act is not a common burden upon all the property or upon the people within the state. Matter of Enston, *ante*. It is not a general but a special tax, reaching only to special cases and affecting only a special class of persons. In such a case, executors have the right, both in reason and in justice, to claim that they shall be clearly brought within the terms of the law before they shall be subjected to its burdens. It is a well-established rule that a citizen cannot be subjected to special burdens without the clear warrant of the law. Id.; Powers *v.* Barney, 5 Blatch. 203; United States *v.* Watts, 1 Bond, 583; Green *v.* Holloway, 101 Mass. 248.

The section imposes a tax upon two classes of persons : 1. Upon all property which "shall pass by will, or by the intestate laws of this state, from any person who may die seized or possessed of the same, while being a resident of the state." 2. Upon property which shall be within this state transferred, *inter vivos*, to take effect at the death of the grantor or bargainor.

The first class was intended to embrace all property passing by will or intestacy upon which it was intended to impose a tax, and what immediately follows related exclusively to property transferred within the state, *inter vivos*, and should be read consecutively as follows: "Which property shall be within this state, or any part of such property, or any interest therein, or income thereof, transferred by deed, grant, sale or gift," etc. Id.

There was no intention by this section to impose a succession tax upon property passing by will or intestacy from a non-resident of this state to his collateral relatives. Id.

§ 11 of this act reads as follows: Section 11. Whenever any foreign executor or administrator shall assign or transfer any stock or loans in this state, standing in the name of a decedent or in trust for a decedent which shall be liable to such tax, such tax shall be paid to the treasurer or comptroller of the proper county on the transfer thereof, otherwise the corporation permitting such transfer shall become liable to pay such tax.

This section imposes no tax. § 1 does this, and it is upon that section alone that reliance can be placed for the exaction of the tax. Matter of Enston, *ante*.

§ 15 of the act reads as follows: § 15. The surrogate's court in the county in which the real property is situate of a decedent who was not a resident of this state, or in the county of which the decedent was a resident at the time of his death, shall have jurisdiction to hear and determine all questions in relation to the tax arising under the provisions of this act

This section can certainly have no operation as it imposes no tax, unless section 1 has imposed a tax in some case upon the real estate, within this state, of a non-resident decedent. Matter of Enston, *ante.*

An inference cannot be drawn from this section that § 1 authorized the imposition of any tax upon the personal property of a non-resident decedent.

There is nothing in this act imposing a succession tax upon the stocks, bonds and other choses in action left within this state by such deceased person. It is a general rule of law that such property attends the owner and has its situs at his domicile. This is a mere fiction of law, it is true, but it is a fiction which must prevail, unless there is something in the policy of the statute, or its language, which shows a different legislative intent. Id.; People *ex rel.* Hoyt *v.* Com'rs, 23 N. Y. 224; People *ex rel.* Jefferson *v.* Smith, 88 Id. 576.

The corporate stocks of a non-resident decedent were not, under the general laws of this state, taxable here, though the share certificates may have been held here by his agent. They are in no general sense property, but simply represent interests in the corporation ; the situs of the property owned by a shareholder in a corporation is either where the corporation exists or at the domicile of the shareholder. It can in no proper sense be said to be where the certificates happen to be in the hands of an agent in a state, where the corporation has no existence and the owner no domicile. Id.

So, too, the funds of foreign corporations in the hands of the agent of a non-resident decedent were not, in a legal sense, property within this state, and were not, under the general laws or policy of this state, taxable here. Id. But, on the contrary, they were, by the general policy of the state, exempted from taxation here. Id.; Williams *v.* Board, etc., 78 N. Y. 561.

There is nothing in the act of 1885, from which it can be inferred that the legislature meant to depart so far from its general system and policy of taxation as to impose here a succession tax upon property thus situated. Matter of Enston, *ante.*

In the Matter of Wolfe, 6 Dem. 268, it was held that no collateral inheritance tax is payable upon the passing of real property, situated without the state of New York, under a devise contained in the will of a resident.

In the Matter of Toulane, 51 Hun, 213, the deceased was, at the time of his death, which occurred in March, 1887, and, for a long time prior thereto, had been, a resident of the state of New Jersey, and the property, the succession to which it was sought to effect by the tax, had been deposited by him in the vaults of a safe deposit company in the city of New York for safe keeping. He died intestate and letters of administration were granted upon his estate in New Jersey, and thereafter ancillary letters were issued in this state. It was held that property owned by a non-resident, and passing by the intestate laws of another state, is not subject to the tax, though situated in this state.

In order to come within the provisions of the act, the property which forms the basis of the tax, must pass by will or by the intestate laws of

the state, or must have been transferred by deed, grant, sale or gift. In this case, no property has passed under any of the conditions mentioned in the statute. Such property has neither passed by will nor by the intes-- tate laws of this state, nor has it been transferred by deed, grant, sale or gift.

Where it has passed by the intestate law of another state, though situated in this state, the case is not within the language nor the spirit of the statute. Matter of Toulane, *ante*.

It was also held in Matter of Hall, 55 Hun. 608, that property in this state of a non-resident testator is not subject to the collateral inheritance tax. But this decision was based upon the Matter of Enston, *ante*, which arose before the amendment of 1887.

In the Matter of Leavitt, Sur. Ct., 1889, it was held that property in this state, real and personal, belonging to a non-resident testatrix, is subject to the tax imposed by chap. 483 of 1885. This case was decided upon the authority of Matter of Enston, 46 Hun, 506.

The property of a non-resident decedent, within this state, is, by chap. 713 of 1887, subject to the tax. Matter of Vinot, Sur. Ct., July 18, 1889. In this case, the decedent was a resident of New Jersey and left both real and personal property within this state. In Matter of Enston, *ante*, the court of appeals held that, under the collateral inheri- tance tax act of 1885, neither real nor personal property of a non-resident is taxable in this state ; but it said that, by chap. 713 of 1887, § 1 of the act of 1885 was so amended as to subject to its operation the property, within this state, of a non-resident decedent. Id.

The original act provided that after the passage thereof " All property which shall pass by will or by the intestate laws of this state from any person who may die seized or possessed of the same while being a resident of this state, or which property shall be within this state," to any one, other than certain excepted persons nearly related to the decedent, should be subject to a tax of $5 upon the hundred " of the clear market value of such property." § 1, chap. 483 of 1885. This statute did not apply to property within this state, either real or personal, that passed by will or intestacy from a non-resident decedent to collateral relatives or strangers, and it was limited in its effect to property so passing to resident decedent. Matter of Enston, *ante ;* Matter of Toulane, *ante ;* Matter of Clark, Sur. Ct., Jan'y, 1890.

The legislature, in 1887, amended the act so that it now provides that " all property which shall pass by will or by the intestate laws of this state, from any person who may die seized or possessed of the same, while a resident of this state, or if such decedent was not a resident of this state at the time of his death, which property, or any part thereof, shall be within this state." § 1, chap. 713 of 1887. The section is so involved as to make the duty of discovering its meaning unusually difficult.

Shortly after the original act was passed, litigation arose over its pro-

visions and the courts were called upon to construe its confused and con-
flicting passages. The surrogate's court, and the supreme court held
that the act, before it was amended, applied to the estate of non-resident
decedents ; and when the question reached the court of appeals, two of
its judges were of the same opinion, but a majority thought otherwise,
and the construction of the lower courts was overruled. Matter of
Enston, 5 Dem. 93 ; s. c. 46 Hun, 506 ; s. c. 113 N. Y. 174. The act
of 1887 was undoubtedly passed in view of the litigation then pending,
and with the intention of removing the doubt caused thereby. Matter of
Romaine, *ante.*

The amendment was intended to make some change, and the expres-
sion " or if such decedent was not a resident of this state at the time
of death," suggests what that change was. Before it was amended,
the act, as was subsequently held, applied only to resident decedents,
but by the amendment, it is made applicable to non-resident dece-
dents. It applies to all resident decedents, and to all non-resident
testators, but it has been contended that it does not apply to non-
resident intestates, because property "which shall pass. . . . . . by
the intestate laws of this state " is expressly mentioned, to the implied
exclusion of property passing by the intestate laws of other states. In
other words, that it was designed to meet cases of succession by will,
but not of succession by intestacy, unless the intestate was a resident
of this state. Id. There is no reason why the legislature should dis-
criminate, simply for the purpose of taxation, between the property of a
non-resident decedent who made, and of one who did not make a will.
There was undoubtedly no intention to tax the estate of non-resident
testators and to exempt those of non-resident intestates, as there is no
foundation for such a distinction. Id. ; People *ex rel.* Westchester F.
Ins. Co. *v.* Davenport, 91 N. Y. 574.

Property of the same kind, situated in the same place, receiving the
same protection from the law and administered upon in the same way,
would naturally be required to contribute towards the expenses of
government upon the same basis, regardless of whether its last owner
dies testate or intestate. Matter of Romaine, *ante.* Although the
intestate laws of this state are named as a source of title, they are not
the exclusive source, and neither necessarily or naturally applied to
the property of non-resident decedents named at a later point in the
section.

By § 11 of the act, all administrators, executors and trustees shall
be liable for taxes until paid, and whenever any foreign executor or
administrator shall assign or transfer any stocks or loans in this state,
standing in the name of a decedent, the tax shall be paid to the proper
officer on such transfer, or the corporation permitting it shall become
liable to pay the tax, provided it had knowledge of the facts in time.
The act is not confined to real estate, but embraces personal property also,
including evidences of debt. All administrators are made liable for
the tax, and corporations can transfer stock standing upon their books

in the name of a non-resident decedent only at their peril, until the tax thereon is paid. Id.

When the Matter or Enston, *ante*, came before the court of appeals, the amendment of 1887 had been passed, but it did not apply to the facts of that case, because they arose before its passage, though the decision was made afterwards. Still the amendment was considered in the prevailing opinion, which stated that " by chap. 713 of 1887, § 1 of the act of 1885 was so amended as to subject to its operation the property within this state of a non-resident decedent ; and that this amendment furnishes some evidence that prior thereto the proper construction of the section, according to understanding of the legislature, did not include within its operation such property."

There appeared to be no difference in the minds of the six judges who took part in the decision as to the effect of the amendment of 1887. They were all of the opinion that, by the change then made, the act applied to the property within this state of any non-resident decedent. Matter of Romaine, *ante*.

The statute may not apply to any property casually brought into the state for a temporary purpose, as by a visitor or traveler. Id. It might well be held that such property, although literally within this state, was not here in the sense meant by the statute, on account of the transitory and accidental character of its presence and the immediate custody of the owner. Id. ; Herron *v.* Keeran, 59 Ind. 472. Where, however, the money of a non-resident is invested in this state in bond and mortgage, and in deposits in the savings banks, or where the property of a non-resident is habitually kept, even for safety, in this state, the statute applies in letter and spirit. Such property is within the state in every reasonable sense, receives the protection of its laws and has every benefit from government, for support of which taxes are laid, that it would have if it belonged to a resident. A fair construction of the act permits no distinction as to such property, based simply upon the residence of the deceased owner. Id. Succession to the personal property of a non-resident intestate, invested or habitually kept by him in this state, is subject to taxation under the collateral inheritance act. Id.

The alteration made by the act of 1887 was accomplished by the insertion of a clause after the words " while a resident of this state " or as follows : " if such decedent was not a resident of this state at the time of his death." Matter of Romaine, 58 Hun, 109.

Under the act of 1885, it was determined, in the Matter of Toulane, *ante*, that the property of the deceased is not subject to the tax provided for, where it has neither passed by will nor by the intestate laws of this state, and has not been transferred by deed, grant, sale or gift, but has passed by the intestate laws of the state of New Jersey, though situated in this state. It is a case not within the language nor spirit of the statute.

It was subsequently held, in the Matter of Enston, *ante*, that prop-

erty within this state, which passed by will or intestacy from a non-resident decedent to collateral relatives or strangers, is not taxable under the act of 1885. And it would seem prior to its amendment in 1887, that the act of 1885 applied only to property so passing from any person who may die seized or possessed of the same while a resident of this state, and to property within the state owned by a resident and transferred *inter vivos*, to take effect after the death of the transferror.

The amendment of 1887 subjected property, within the state, of a non-resident decedent to the tax provided for by the acts under consideration. Matter of Romaine, *ante*. The fiction, that the property, sought to be subjected to the tax, attends the owner, and has its situs at his domicile, was destroyed by this statute for its purposes. Id. Its language seems so clearly to embrace the property of a non-resident decedent in this state at the time of his death, that no controversy can be well maintained with regard to it. It, therefore, applies to property within this state of a non-resident decedent and subjects it to a tax. Id.

Personal property of a non-resident decedent which consists of moneys on deposit or bonds secured by mortgage on property in this state, is subject to the collateral inheritance tax under chap. 713 of 1887. Matter of Clark, *ante*.

The tax is on the transmission of the property " being in the state," and no reason has been assigned or can be suggested, why the broad language of the statute and the evident design of the legislature should be so narrowed and restricted as to exempt from this tax the property of a non-resident actually here, notwithstanding that the same property, may, for other purposes, be treated as constructively elsewhere. Id.; State *v.* Dalrymple, 17 At. Rep. 82. The opposite view would result in a discrimination in favor of the non-resident, and against our own citizens. In permitting property within the state, upon the death of its owner, to pass by devise, descent or distribution, the legislature has seen fit, where strangers or collateral kindred receive it, to exact as a condition, upon which that privilege is granted, the tax in question. The imposition and collection of the tax do not, therefore, depend upon the mere accidental residence of the owner. Id. Such property enjoys the protection afforded by the laws of this state, and should pay, as the condition upon which the privilege of allowing it to pass is granted, the tax imposed by the law. Id.

*Penalty*, §§ 4 and 5, chap. 483 of 1885 read as follows:

§ 4. All taxes imposed by this act, unless otherwise herein provided for, shall be due and payable at the death of the decedent, and if the same are paid within one year, interest at the rate of six per cent per annum shall be charged and collected thereon, but if not so paid, interest at the rate of ten per cent per annum shall be charged and collected from the time said tax accrued; provided that if said tax is paid within six months from accruing thereof, interest shall not be charged or collected thereon, but a discount of five per cent shall be allowed and deducted from said tax, and in all cases where the executors, administrators or trustees do not pay such

tax within one year from the death of the decedent, they shall be required to give a bond in the form and to the effect prescribed in § 2 of this act for the payment of said tax, together with interest.

§ 5. The penalty of ten per cent per annum imposed by § 4 hereof for the non-payment of said tax shall not be charged where, in cases by reason of claims made upon the estate, necessary litigation or other unavoidable cause of delay, the estate of any decedent, or a part thereof, cannot be settled at the end of a year from the death of the decedent, and in such cases only six per cent per annum shall be charged upon the said tax from the expiration of such year till the cause of such delay is removed.

By § 4 of the act of 1887, which is made applicable by chap. 476 of 1889, if the tax is paid within eighteen months from the death of the decedent, no interest is charged. Matter of Stewart, Sur. Ct., 1890. By § 5 of the same act, it is provided that " the penalty of ten per cent per annum imposed by § 4 hereof, for the non-payment of said tax, shall not be charged where, by reason of claims made upon the estate, necessary litigation, or other unavoidable cause of delay, the estate of any decedent, or a part thereof, cannot be settled at the end of eighteen months from the death of the decedent, and in such cases, only six per cent per annum shall be charged upon said tax from the expiration of said eighteen months until the cause of such delay is removed."

Neither § 2650, nor § 406, of the Code affects this case. There is no provision of law suspending the payment of interest during the time of the litigation or unavoidable cause of delay. § 5 of 1887 only relieves from the penalty, but not from the interest. Id.

A tax does not carry interest by implication of law as in the case of a debt, and, in all systems of taxation, where default is made in the payment of the tax, interest is added by way of penalty for such default. Matter of Prout, Sup. Ct. July 9. 1889. In the fourth section of this act, if the tax is paid within one year, interest at the rate of six per cent shall be charged and collected thereon, but if not so paid, interest at the rate of ten per cent shall be charged and collected from the death of the decedent. Then there follows a premium for prompt payment, whereby there is allowed in a case, where the tax is paid within six months, a discount of five per cent, and a provision that no interest shall be charged. Id. The language of § 5 expressly recognizes the nature of this interest, which is charged because of the failure to pay the tax within six months after the death of the decedent. It provides that the penalty of ten per cent per annum, imposed by § 4 for the non-payment of said tax, shall not be charged, and thus expressly recognizes the idea that the whole amount of the interest is a penalty. Id. It does not refer to the addition of four per cent as being the penalty, but it states that the penalty of ten per cent per annum, imposed by section four shall not be charged in certain cases, and then provides that in such cases only six per cent per annum shall be charged from the expiration of the year following the death of the decedent. Id.

If the penalty of ten per cent is to be remitted, nothing remains, and the

charge for interest imposed by the subsequent language of § 5 only being from the time above mentioned. Id.

The burden, under this section, rests upon the party claiming exemption to show that it comes within the provisions of the act, viz.: that the settlement of the estate has been delayed by necessary litigation or other avoidable cause, and that, therefore, they are not in a condition to settle the estate or pay the tax. Id.

If the tax is paid in six months there is a rebate of five per cent. If paid after the six months, and within the year, interest at six per cent is charged upon it. This provision is for a case where the estate may be conveniently settled, and the tax paid within the year. In such a case, after the expiration of the year, the ten per cent penalty is imposed. Id. If it is a case where the estate cannot be so conveniently settled for the reasons specified in the act, neither the past interest nor the ten per cent penalty is imposed, but simply six per cent from the end of the the year until the cause of the delay is removed. Id,

The act of 1885 provides for interest from the date of death, with an exception of rebate for payment within six months, but does not anywhere release the property from interest absolutely, but only from the penalty, if a proper case is made out in the opinion of the surrogate. Matter of Prout, Sur. Ct., 1889.

Reading §§ 4 and 5 together, it seems plain that the intention is merely to relieve the estate from the penalty, and not from the interest. Id. For the year succeeding the decedent's death, six per cent interest is charged. After that a penalty is imposed. If good reason is shown why the estate cannot be settled before the penalty was incurred, § 5 authorizes the surrogate to remit the penalty by providing that only six per cent shall be charged from the expiration of the year ; in such case, the interest is continuously six per cent from the death of the decedent until the cause of such delay is removed ; from that time, the penalty of ten per cent begins to run until paid. Id.

The amendment of 1887 does not absolutely provide that, if the tax is paid within eighteen months from the date of death, no interest shall be charged. Id.

*Restitution.*—Where, after payment of a tax under an order of the surrogate's court holding an estate to be liable to taxation under chap. 483 of 1885, an appeal has been taken from the order and such order has been reversed, but in the meantime the money has been paid by the comptroller of the city of New York to the state comptroller, restitution of the money so paid will not be ordered to be made by the comptroller of the city of New York. Matter of Howard, 54 Hun, 305. The tax so paid never became any part of the money or property of New York city or county. The comptroller received it for the benefit of the state, and, under the act, it has been made a state tax, and the comptroller was required by § 21 to pay over the amount so received by him to that state treasurer. Id. Where the money was so paid over by him prior to the time when the order or

decree of the surrogate is reversed, he has no fund or money in his hand out of which restitution can be ordered.

The act does not contemplate that he should be required to return it to the party who may become entitled to receive it, after it has been paid over to the authorities of the state. Id.

But a different remedy has been prescribed by the act for the reimbursement of the money. This has been created by § 12 of the act which declares : "When any amount of said tax shall have been paid erroneously to the state treasurer, it shall be lawful for him, on satisfactory proof rendered to the comptroller by said county treasurer for comptroller of such erroneous payment, to refund and pay to the executor, administrator, person or persons who have paid any such tax in error, the amount of such tax so paid, provided that all such applications for the payment of such tax shall be made within five years from the date of such payment. This is a simple and available proceeding, afforded to the party entitled to the reimbursement of the money paid for the tax. Matter of Howard, *ante.* This statute and the law preceding it have created a new liability, not previously existing under the laws of the state. The remedy by this section is complete and effectual, and was intended, without doubt, to be the only mode of proceeding which should be adopted and followed for that purpose. Id.

In Dewy *v.* Supervisors, etc., 62 N. Y. 294, the county of Niagara was sued for the recovery of moneys which had been raised by assessments to pay the expenses of draining certain lowlands. The assessment proceedings had been reversed upon *certiorari*, but the money had been paid out and disposed of, as the law directed it to be, by the treasurer of the county before the action was commenced. This was held to constitute a defense and prevent a recovery against the county. The same principles should be applied to the case, where repayment of tax is sought from the comptroller, not only from the nature and provisions of the statute, but also from the rule in this manner maintained by the court. Matter of Howard, *ante.*

The question of restitution cannot come up as part of the hearing and decision of the appeal from a decree directing payment of the collateral inheritance tax, taken after such payment has been made. Matter of Hall, Sup. Ct. 1889. The record, in such case, will not show the execution of the decree, and the question whether such decree shall be affirmed or reversed, must be independently determined. Id. If such decree shall be reversed, the mode of obtaining restitution is pointed out by § 12, chap. 713 of 1887. The ordinary practice, under § 2587 of the Code, is inapplicable, where the money has actually been paid into the state treasury. Where the tax has been paid into the state treasury, and five per cent for collection retained by the officers under § 22 of the act of 1885, the proper mode of obtaining restitution from the state has been defined in the case of Matter of Howard, 54 Hun, 305.

The comptrollers of the state and city, and county treasurer, must not be made parties to an appeal under § 2573 of Code. Id.

*Procedure.*—§ 2 of the collateral inheritance act provides that when

any grant, gift, legacy or succession, upon which a tax is imposed by § 1, shall be an estate, income or interest for a term of years or for life, the entire property or fund, by which such estate, income or interest is supported, or of which it is a part, shall be appraised immediately after the death of the decedent at what was the fair market value thereof at the time of his death, in the manner provided for in § 13 ; and the surrogate shall thereupon assess and determine the value of the estate, income or interest subject to said tax, in the manner recorded in said section. Matter of Astor, 6 Dem. 402 ; 20 Abb. N. C. 405. By § 13, the value of the estate is to be ascertained by an appraiser, who shall be some "competent person appointed for that purpose, who shall appraise the same at its fair market value," and upon his report, the surrogate shall fix a then cash value of estates, annuities, life estates, etc. By reading § 2 and § 13 of the act together, it will be seen that the value of all the estates, subject to the tax, must be ascertained by an appraiser, before whom all parties interested have the right to appear. Id.

The provisions of § 13 require the appraiser to forthwith give notice to "all persons known to have or claim an interest in such property of the time and place he will appraise such property." He must also give such notice to such persons as the surrogate may by order direct. He has thus another duty separate and apart from the surrogate, viz. : to exercise his our judgment as to what persons shall have notice and then look to the surrogate's order for the names of any other persons discovered and desig nated by him. Id.

The act, considered in its entirety, intends that the surrogate shall be the superior authority upon all questions, including that of value of the estate subject to the tax. It means that he shall act judicially, though it is a new and strange duty imposed upon a judge, that he shall become an appraiser of the value of all kinds of property, which may be the subject of a gift or legacy, and an assessor of taxes to be levied thereon. Id. But this additional function, it seems, has been bestowed upon the surrogates of this state by this law. Id.

It is primarily the duty of the executor to apply for an appraisement, so that he may ascertain and pay the tax. Frazer v. People, 6 Dem. 174. The power given to the surrogate, of his own motion to cause appraisement to be made and to fix the tax, was not intended to relieve the personal representatives from their duty in the matter. Id.

The tax is due and payable from the death of the decedent for the purposes, among others, that proceedings may be had to appraise and ascertain the value of the estate subject to the tax, and the amount of the tax, and that interest may be charged from the death of decedent, in case the tax is not paid within eighteen months thereafter ; but, as section 4 of the act of 1887 provides that, if the tax is paid within eighteen months no interest shall be charged and collected thereon, it seems that no proceedings can be instituted to enforce the payment of the tax within the eighteen months. Id. It was intended to enable the representative of the decedent, under many contingencies which may arise in the settlement of the estate, to

ascertain the amount of the tax ; and, for that purpose, time may be necessary to determine the indebtedness of the decedent, etc. Id.

This tax is imposed according to the value of the legacy and collateral inheritance liable to be taxed, and hence there must be some mode of ascertaining that value ; and, for that purpose, judicial action is requisite at some stage of the proceedings, before the liability of the taxpayer becomes finally fixed. Matter of McPherson, *ante.* He must have some kind of notice of the proceeding against him and a hearing, or an opportunity to be heard, in reference to the value of his property, and the amount of the tax which is thus to be imposed. Unless he has these his constitutional right to due process of law is invaded. Id. ; Stuart *v.* Palmer, 74 N. Y. 183.

The surrogate acting judicially as a court, must, upon the application of an interested party, appoint some competent person as appraiser, from time to time as occasion requires, whose duty it shall be to forthwith give notice by mail to all persons known to have or claim an interest in such property, and to such persons as the surrogate may by order direct, of the time and place he will appraise such property. Matter of Astor, *ante.* Such applicant may be any person having an interest in the whole estate, who is now designated by law, and also the county treasurer, and in New York the comptroller, represented by the district attorney. On failure of any such person to make application the surrogate may act upon his own motion in appointing an appraiser. Id.

§ 13 of the act reads as follows :

In order to fix the value of the property of persons whose estates are subject to the payment of the tax, the surrogate, upon the application of any interested party, or upon his own motion, shall appoint some competent person as appraiser, as often as and when occasion may require, whose duty it shall be forthwith to give such notice by mail, and to' such persons as the surrogate may by order direct, of the time and place he will appraise such property, and at such time and place to appraise the same at its fair market value and make a report thereof to the surrogate, together with such other facts in relation thereto as the surrogate may by order require, to be filed in the office of the surrogate ; and from this report the surrogate shall forthwith assess and fix the then cash value of all estates, annuities and life estates or term of years growing out of said estate, and the tax to which the same is liable, and shall immediately give notice thereof by mail to all parties known to be interested therein.

The order of the surrogate, appointing the appraiser, should designate the persons upon whom the appraiser shall forthwith serve notice by mail. These persons, for the sake of certainty and finality of proceeding, should be all who are now by law interested in the whole estate and by law entitled to notice of all proceedings affecting the same. Matter of Astor, *ante.* This section does not provide for the length of the notice. It is the duty of the surrogate to fix it. And the facts in each case must be his guide in this respect.

All parties notified by the appraiser have the right to attend before him

and to be heard upon the question of value of the property and its or their liability to the tax. The appraiser must report to the surrogate the fair market value of the property he deems subject to the tax, together with his proceedings and any and all facts known to him germaine to the duties imposed upon him by the order of his appointment. Id. But he has no right, under this act, to administer oaths and take testimony upon any of the questions to be considered by him. This is a serious lack of power, which should have been conferred upon him for obvious reasons. Id.

On the coming in of the appraiser's report, the surrogate shall forthwith assess and fix the then cash value of all estates. He shall also give notice thereof by mail to the same parties as were notified by the appraiser. The requirement in this regard will be met by such prompt notice as the surrogate shall deem reasonable under the facts of each case. Id.

The surrogate who has admitted a will to probate, or granted letters of administration, will ordinarily have in his possession information as to the persons interested in the estate to be administered. § 13 imposes upon him the duty of electing the persons to whom notice is to be addressed by the appraiser. As all persons interested are entitled to notice, it was intended that the surrogate should direct notice to be given to all such persons. Matter of McPherson, 104 N. Y. 306.

Where, at the date of the death of the decedent, the appraiser cannot determine, either the value of the estate which may eventually become taxable, or the persons to whom it will pass, he cannot make any appraisal. Matter of Stewart, Sur. Ct., Apr. 16, 1890. In such case, it has been the practice of the New York surrogate's court to suspend all proceedings as to such contingent estate, until such contingencies happen, with a view to the appointment of an appraiser at that time to make the appraisement.

The appraiser should only report upon the property now subject to the tax, and when the contingency happens, and the number and interest of the collateral heirs are definitely and exactly determined, another appraisement should then be made, and the tax assessed upon their interests then to be ascertained. Id. In the Matter of Clark, 1 Con. 431, it was held that, until the contingency is decided, the matter must remain suspended, and then it can be determined to whom the property will pass, and whether or not it is subject to the tax.

It is a well settled principle of law that, where parties take under a power of appointment, they take under the instrument creating the power. Matter of Stewart, ante. Though their interests do not accrue until the date when the power was exercised, yet at that date also the tax upon their interests accrue. Id.

The appraiser of a decedent's estate, subject to the collateral inheritance tax, is only required to find the fair market value of the property at the death of the decedent. And the question of the possible appreciation or depreciation of the estate within a few months or a few years is not material. Matter of Leavitt, ante.

The title to the property vests in the legatee or distributee at the date of

the decedent's death. Matter of Bird, *ante.* Its fair and market value must be ascertained as of that date, by an appraisement to be then had. And the tax is declared to be then "due and payable," and at that time the right of the state to the tax vests. Id.

By section 4 of the act, it is provided that the legatee or distributee may have eighteen months within which to pay the tax, without interest. For six months after the legacy may have come to his possession, the legatee is relieved from the payment of the tax. The legislature, in order to effectuate the purpose of the act, was compelled to provide a time when the value of the property subject to the tax must be ascertained, and, upon that value, the tax must be paid, as a condition of its delivery to the legatee. The machinery, provided for ascertaining the value of such property, is not intended for use in respect of moneyed legacies. Id. § 6 of the act provides : " If the legacy be money, the executor shall deduct the tax therefrom, or, if the legacy or other property be not money, he shall collect the tax thereon, upon the appraised value thereof, from the legatee or person entitled to such property ; and he shall not deliver, or be compelled to deliver, any specific legacy or property subject to tax to any person, until he shall have collected the tax thereon."

The legislature plainly distinguishes between a money legacy and one of other property. A money legacy need not be appraised. Id. In fact, the act itself is an appraisement by the legislature of a money legacy at its face value at the date of the decedent's death. Legacies of property, not in money, are to be appraised, at their fair, clear market value, as of the date of decedent's death, not as of one year thereafter, when the legacy is payable and its delivery may be enforced.

The fair market value of the property, subject to the tax, is not what it will be worth when the legatee is entitled to receive it. Id. This construction of the act works its repeal, and is contrary to its very letter.

The surrogates of Westchester and Kings Counties have appraised the money legacy at what it will be worth to the legatee at the end of the year, and to ascertain that fact, they take five per cent. from its face value.

Under this act, estates for life should be valued according to rules of the Supreme Court. Matter of Robertson, 5 Dem. 92.

It is the duty of the appraiser to report the value of contingent annuities. Matter of Clark, *ante.* See Matter of Cager, *ante.* Contingent estates may be appraised if their value can be ascertained. Matter of Clark, *ante.* The contingent annuitants cannot be required to pay for something they may never receive. Id.

The act expressly exempts certain persons, and taxes others, and it cannot be rightly held, where property was left for life to an exempt person, and, after his death, for life to one not exempt, should he survive, that, in that event, the corpus of the estate, which is exempt, should be diminished by the amount of the tax upon the happening of an event which would not make the life tenant liable to the tax, whether it did or did not happen, and which, if the contingency should fail, might throw the estate back to persons who were exempt. Id.

Note on " Collateral Inheritance Tax."

Neither the first, nor the last, estate should be taxed for the contingent second estate. Where it is absolutely impossible to decide to whom the property will go, the intention is that the appraiser shall report the fair market value of the property at decedent's death and that the matter must be regarded as suspended until the contingency does, or does not happen, at which time, that is, at the death of the tenant, it can be determined to whom the property will pass, and whether or not it is subject to the tax. Id.

The appraiser should only report upon the property now subject to the tax, and when the contingency happens and the number and interest of the collateral heirs are definitely and exactly determined, another appraisement should then be made and the tax assessable upon their interests then be ascertained. Matter of Wallace, Sur. Ct., Oct., 1888.

In making the appraisal, the duty of the appraiser is confined to fixing and reporting the value of any articles specifically bequeathed, if ordered by the surrogate, and of the annuities, and of the life estate, etc., which are taxable. Matter of Jones, *ante*. The surrogate shall then assess and fix the then cash value thereof and the tax to which they are liable. The words "the same," without doubt, refer to life estates, annuities, etc. Nothing is said about fixing any value on legacies in money or in specie and the tax thereon. Id.

The tax on them and the collection thereof are sufficiently provided for by § 6, which directs the executor, administrator or trustee to deduct a tax from the shares or legacy, and to collect the tax on the appraised value of the specific legacy before delivery. Id. If life estates in money or land are given to any of the persons exempt from the tax, with remainder over to any of the persons not exempt, the appraiser will also be directed to report the value of such remainders, in order that the surrogate may be enabled to fix the tax thereon. Id.

Where the whole of the estate is money, or to be regarded as of that character, the executor must retain the tax, as fixed by the act, out of the amount of each legacy. But he shall not, by § 8, be entitled to credit in his accounts, nor be discharged from his liability for such tax, unless he produces a proper voucher for the same from the county treasurer, sealed and countersigned by the state comptroller. If he shall fail to pay the tax on a money legacy, the remedy is by appropriate proceedings against him. Id.

It is only necessary to appoint an appraiser, where specific legacies, subject to tax, are given, or where taxable inheritance exists, or estates in fee are devised, or remainders, annuities, life estates, or terms of years, are created. Id. And it is only in such cases, or some of them, that the county treasurer, under § 17, may notify the district attorney, who is required, by section 16, to apply for the citations to parties interested in the property and take the proceedings therein provided. Id. And it is only in such cases that the decree made may be docketed against the persons interested in the property liable to tax.

Neither the surrogate nor the appraiser has anything to do with the tax

14

upon taxable money legacies or distributive shares, except perhaps that the
surrogate may, to a limited extent, coerce payment thereof by the executor
or administrator.  Id.  In the latter case, the liability to pay the tax is
imposed upon the legal representative ; in the former, upon the life tenant,
remainderman, etc.  The only method provided by the act, which the sur-
rogate may employ to enforce the  liability to pay imposed upon the representa-
sentative, is to refuse to allow him credit on his accounting for the amount
of such liability, unless he produces the voucher, required by the act.  Id.
In such case, his liability will continue; but no provision seems to have
been made as to how payment shall be  enforced by surrogate's court.  He
is not within the purview of §§ 16, 17 of the act as they relate and apply
solely to the person interested in the property liable to the tax.  If he set-
tles with the legatees, who are all of age, and retains the amount of the
tax in his hands, takes releases and renders no account, the county treas-
urer is empowered, by § 21, to collect that, as well as all other taxes.  Of
course as there is an obligation imposed on the executor or administrator
to pay the treasurer, he may resort to any court of law to enforce payment.
Id.  In short, the treasurer must collect the tax on legacies and distributive
shares from executors or administrators, and on estates inherited or created
by will, from the owners thereof.  In the latter case such collection may
be made by proceedings  provided for in §§ 16, 17 of the act, or otherwise
as he may be advised.  Id.

The appraiser should report any property, estate or interest therein sub-
ject to the tax.  Matter of Astor, *ante.*  He is not appointed to fix the
value of the property which is not subject to the payment of the tax.  Id.
In order to ascertain what property is subject thereto and its fair market
value, he necessarily ascertains that certain other property is not subject
to it—that is, exempt.  His duty is not to report such exemption.  If, in
the view of any person interested, the appraiser has not reported all prop-
erty subject to the tax, such person can and should raise the question on
the coming in of his report.  And if such  objection is correct, the report
should be sent back with instructions to appraise the fair market value of
such property.  Id.

The appraiser's report, when confirmed, is in the nature of a decree im-
posing a tax upon certain described property.  And, so far as the state is
concerned at least, it must be final in respect to any future claim for this
tax upon all property then in existence and known to the appraiser.  This
is upon the assumption that he acted upon good faith and that there is no
concealment or fraud on the part of the person interested in such property.

If the appraiser is in any doubt as to the liability of any property to the
tax, he should report it subject thereto.  In that case, any person dissatis-
fied has ample protection, provided for by § 13 of the act by appeal to the
surrogate, in the event that the appraiser is sustained on the coming in of
his report, by giving security for the tax, and further protection by appeal
from the decree of the surrogate by the usual steps to the court of last
resort.  Id.

So far as the state is concerned, the legislature  intended that the surro-

gate, assisted by the appraiser, shall be the ultimate power. Exemptions from the tax should not, therefore, be adjudged, except upon the facts to be ascertained by the surrogate according to usual methods in a court of justice. Id. The appraiser, except in the plainest case, ought to hold all property passing by the will of a resident, or by the intestate laws of this state, subject to the tax. Where the claim of a person interested that his property is not subject to the tax can only be disposed of, in justice to him and to the state, by the examination of witnesses, or the introduction in evidence of documents, the surrogate has the power, under the act, and it is his duty, to require legal proof of all the facts pro and con. Id.

The appraiser should appraise the property subject to the payment of said tax, but the source of his information need not necessarily be stated. At all events, he should unequivocally report that he has appraised all property subject to the payment of the tax. Id.

An executor may, by inadvertence, forgetfulness or fraud, fail to disclose all property of the deceased subject to the tax. Id. The appraiser is not precluded by such information. He fails to perform his duty if he seeks for no property beyond that which is disclosed by the executor. His report should be that he has appraised all property subject to the tax, giving the name of the owner or person having an interest therein; and if, in his judgment, his means of ascertaining the expense of such property may be pertinent and material for the information of the surrogate, he should state them. Id. He cannot assume, however, that information from the executor, or from any other person, is conclusive. Id.

It is the duty of the surrogate to ascertain the names of persons known to have or claim an interest in such property at the time of appointing the appraiser, and to give such names in the order. Matter of Astor, Id. To these persons the appraiser must give notice. He is not, however, relieved by such order from inquiry from any other person or persons known to have or claim an interest in such property. He should report, not only service upon persons named by the surrogate, but the additional fact that they are, or are not, all the persons known to him to have or claim such interest. Id.

The statute provides a method of bringing to the surrogate's official attention and obtaining from him a decision as to the liability of executors to pay the collateral inheritance tax. Matter of Farley, Sur. Ct. Feb., 1888. It reads as follows: " Whenever the treasurer or comptroller of any county shall have reason to believe that any tax is due and unpaid under this act, after the refusal or neglect of the persons interested in the property liable to said tax to pay the same, he shall notify the district attorney of the proper county in writing of such failure to pay such tax, and the district attorney so notified shall prosecute the proceeding in a surrogate's court in the proper county, as provided in § 16 of this act for the enforcement and collection of such tax."

The executor, himself, has no right, under any of the provisions of this act, to institute proceedings for the determination of the question of his liability. Nor has the surrogate any jurisdiction to entertain any such

motion, under the provisions of these statutes, making it his duty, in proper cases, to direct and control the conduct of executors. Id. See § 17 of act of 1885 and 1887. Also subd. 3, § 2472 of Code.

It is, no doubt, important for the executor to be instructed in regard to his liability for the payment of such tax. But he cannot reverse the order of proceedings provided by the statute, and anticipate the action of the district attorney. Id.

It is also provided, that, immediately after he has assessed the tax, the surrogate shall " give notice thereof by mail to all parties known to be interested therein." This gives a further opportunity to the taxpayer to be heard. Upon receiving the notice, if he has had no prior notice or hearing he may apply to the surrogate and ask for one, and it will be the latter's duty to grant it. Matter of McPherson, *ante.*

The right of appeal is provided in the same section. Any person dissatisfied with the appraisement or assessment, may appeal therefrom to the surrogate of the proper county, on paying or giving security to pay all costs and the tax as fixed by the court. Upon such appeal there is another opportunity to be heard. Id. The appeal is not limited to questions of law, but may be taken to the surrogate upon both the law and the facts, and the latter has ample power to correct any error brought to his attention. In making such correction, he is not bound by the estimate of the appraisers, or by the facts which appeared before him. He may hear such new evidence and allegation as may be properly presented to him. Id.

In § 16 of the act, it is provided, that, if it shall appear to the surrogate's court, that any tax accruing under the act has not been paid, according to law, it shall issue a citation, citing the persons interested in the property, liable to the tax, before the court on a day certain, not more than three months after the day of such citation, to show cause why the tax should not be paid. Id. The service of such citation, and the time, manner and proof thereof, shall conform to the provisions of the Code of Civil Procedure for the service of citations now issuing out of surrogate's court. So, too, under this section after the tax has been imposed, no person can be compelled to pay it until a citation has been regularly served upon him, and he has ample opportunity to be heard. Id. The person thus cited may allege any reason whatever which shows that he ought not to pay it. He may answer that he had had no opportunity to be heard upon the appraisal, and that the tax, therefore, as to him, is void. He may show any error affecting the validity of the tax, or that he has not received and never will receive the inheritance or legacy. It will undoubtedly be a justification for refusing to pay it that he has absolutely renounced and refused to accept or receive the inheritance or legacy. Id. And if the surrogate shall err in his decision he has the right of appeal to the supreme court, and the same right which parties have in other cases to bring to the court of appeals for review the decisions of surrogates' courts. Id.

All of these modes furnish sufficient provisions for notice and hearing for all parties interested in the tax. Id.

The notice must fix the day and hour when the surrogate will hear any of said parties in regard to the subject matter, which has been committed to the appraiser by the order for his appointment. And it is only thereafter that the surrogate must forthwith assess and fix the true cash value of all estates. Matter of Astor, *ante.*

The last paragraph of this section very plainly points out the grounds and mode of appeal from this assessment by the surrogate. Id. The appeal is from the surrogate to the surrogate. But persons dissatisfied must give security for whatever tax shall be fixed by the court. The time to appeal is limited to sixty days.

Under § 16 of this act, the surrogate's court must issue a citation citing the persons interested in the property, liable to the tax, to appear before the court on a day certain to show cause why the said tax should not be paid.

Sec. 17 makes it the duty of the county treasurer or comptroller whenever he shall have reason to believe that any tax is due and unpaid under the act, after the refusal or neglect of the persons interested in the property to pay the same, to notify the district attorney in writing. Id.

Sec. 18 provides that "the surrogate and county clerk of each county shall every three months make a statement in writing to the county treasurer or comptroller of his county of the property from which, or the party from which, he has reason to believe a tax under this act is due and unpaid."

On reading these three sections as one, it appears that the surrogate should not take any steps, upon his own motion, until the expiration of eighteen months after the date of the decedent's death. Id. He should then ascertain, from the proceedings generally in his court relating to the estate, from the will if there is one, and from any source open to him, whether any tax, accruing under this act, has not been paid according to law. If it shall appear to him that it has not been paid, he should issue the citation and take the proceedings provided for in § 16. Until the expiration of eighteen months after decedent's death, the comptroller and district attorney ought not to initiate any proceedings, except on the former's application, for the appointment of an appraiser. The intent of the act is, undoubtedly, to relieve the estate and persons interested therein, and the administrators, executors or trustees, at their option, from the payment of the tax during eighteen months next succeeding the death of decedent. Id.

In the case of a will, under the provisions of which the legacies, subject to this tax, are in cash, the appointment of an appraiser is not necessary. Id. The surrogate on application, or on his own motion, shall appraise the value of this species of property and assess the tax by order, and thereupon give notice to all persons, as hereinbefore indicated.

Sec. 20 of the act seems to exclude from record, in the book to be kept by the surrogate, cash subject to the tax. But this is not the real intent of

the section read in the light of the other provisions of the act. Id. This book must contain all that is specifically mentioned in this section, and also the property in cash subject to the tax and the tax assessed thereon.

Where the act of 1885, as amended by act of 1887, is applicable, the people is a proper party to the proceeding, if not as a creditor, at least as interested in the estate. Matter of Arnett, 49 Hun, 599. By § 1 of the acts, both original and amended, the taxes thereby imposed are payable to the treasurer of the county "for the use of the state." By § 4, such taxes become due and payable at the death of the decedent; and, by § 6, they are to be deducted by the executors from the several legacies before the payment of the latter to the legatee. By § 2731 of the Code a creditor or person interested in the estate though not cited, is entitled to appear upon the hearing, and thus make himself a party to the special proceeding. These provisions are applicable to the case of the people claiming payment of the collateral inheritance tax. This tax, though it is required to be assessed upon the particular legacies or estate given by the will, is yet, in a perfectly proper sense of the words, payable out of the estate of the decedent.

The people is a party interested in the estate, and is, therefore, entitled to intervene, as a party to the proceeding, without being cited thereto.

The authority of the district attorney to appear for the people, on the accounting by the executor, in such case, is not derived from these acts. They make no reference to such proceeding. Id. In the proceeding prescribed by the statute, the district attorney can move only as he is set in motion by written notice from the county treasurer. See § 17. There is no reason why the authority of an attorney for the people should be any more subject to question than his authority to appear for any other party to an action or proceeding. Id. He is entitled to the presumption of authority which obtains in every case of an appearance, in a court of record, by an attorney and counsellor of the supreme court. Id.

The statute imposing upon the surrogate the duty of assessing and fixing such tax also gives him the power to enforce its payment by such proceedings, as are provided for the enforcement of the decrees of the surrogate's court. Matter of Prout, ante. Against persons interested in the property liable to the tax, other than administrators, executors and trustees, the surrogate can, on the return of an execution issued upon his decree, enforce the decree, by proceedings for contempt, under § 2555 of the Code. Id. But in such a case, execution must first issue before application can be made to the surrogate's court, to enforce its collection. Id. As to the administrators, executors and trustees, application for an order directing them to pay the tax, can be made to the surrogate's court without leave. Id.

§ 16 of the act provides that "If it shall appear to the surrogate's court that any tax, accruing under this act, has not been paid according to law, it shall issue a citation, citing the persons interested in the property liable to the tax to appear and show cause why said tax should not be paid. Service of such citation . . . . . . and the hearing and determination thereof, and the enforcement of the determination or decree, shall.

conform to the provisions of the Code for the service of citations now issuing out of surrogate's court, and the hearing and determination thereon and its enforcement.

And the surrogate, or clerk of the surrogate's court, shall, upon request of the district attorney, treasurer of the county, or comptroller of the county of New York, furnish, without fee, one or more transcripts of such decree as provided in § 2553 of the Code; the same shall be docketed and filed by the county clerk of any county . . . . . with the same effect as provided by said section for filing and docketing transcripts of such courts."

§ 17 of this act provides " that the district attorney, after being notified by the comptroller of the neglect or failure of the persons interested in the property liable to said tax, to pay the same, shall prosecute a proceeding in the surrogate's court . . . . . as provided in § 16 of this act, for the enforcement and collection of such tax.

No costs may be awarded except " after the refusal or neglect of the person interested in the property, liable to said tax to pay the same." See § 17. Frazer v. People, ante.

Acts of 1889.—§ 1 of chap. 307 of 1889, amending § 13 of chap. 713 of 1887, reads as follows:

§ 13. In order to fix the value of property of persons whose estates shall be subject to the payment of said tax, the surrogate, on the application of any interested party, or upon his own motion, shall appoint some competent person as appraiser as often as and whenever occasion may require, whose duty it shall be forthwith to give such notice by mail to all persons known to have or claim an interest in such property, and to such persons as the surrogate may by order direct, of the time and place he will appraise such property; and at such time and place to appraise the same at its full market value, and make a report thereof in writing to said surrogate, together with such other facts in relation thereto as said surrogate may by order require, to be filed in the office of such surrogate; and from this report the said surrogate shall forthwith assess and fix the then cash value of all estates, annuities and life estates or terms of years growing out of said estate, and the tax to which the same is liable, and shall immediately give notice thereof by mail to all persons known to be interested therein, and the value of every future or contingent or limited estate, income or interest shall, for the purpose of this act, be determined by the rule, methods and standards of mortality and of value, which are employed by the superintendent of the insurance department in ascertaining the value of policies of life insurance and annuities, for the determination of the liabilities of life insurance companies, save that the rate of interest to be assessed in computing the present value of all future interests and contingencies shall be five per cent. per annum; and the superintendent of the insurance department shall, on the application of any surrogate, determine the value of such future or contingent or limited estate, income or interest, upon the facts contained in such report and certify the same to the surrogate, and his certificate shall be conclusive evidence that the method of computation

adopted therein is correct. Any person or persons dissatisfied with appraisement or assessment may appeal therefrom to the surrogate of the proper county within sixty days after the making and filing of such assessment on paying or giving security approved by the surrogate to pay all costs, together with whatever tax shall be fixed by said court, . . . . etc.

§ 1 of chap. 479 of 1889, amending § 25 of chap. 713 of 1887 reads as follows:

§ 25. All acts or parts of acts inconsistent with the provisions of this act are hereby repealed, but this act shall apply to all estates of deceased persons where no assessment of the tax has been made to which such estate or estates are liable under the provisions of the foregoing act.

*Act of 1891.*—§ 1 of chap. 215 of 1891 reads as follows:

§ 1. After the passage of this act all property which passes by will or by the intestate laws of this state from any person who may die, seized or possessed of the same while a resident of this state; or, if the decedent was not a resident of this state at the time of his death, which property or any part thereof shall be within this state; or any interest therein or income therefrom, which shall be transferred by deed, grant, sale or gift made in contemplation of the death of the grantor or bargainor, or intended to take effect in possession or enjoyment after such death, to any person or persons or to any body politic or corporate in trust or otherwise, or by reason whereof any person or body politic or corporate shall become beneficially entitled in possession or expectancy to any property or the income thereof, other than to or for societies, corporations and institutions now exempted by law from taxation, or from collateral inheritance tax, shall be and is subject to a tax at the rate hereinafter specified, to be paid to the treasurer of the proper county, and in the county of New York to the comptroller thereof, for the use of the state; and all heirs, legatees, devisees, administrators, executors and trustees shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed. When the beneficial interest to any personal property or income herefrom shall pass to and for the use of any father, mother, husband, wife, child, brother sister, wife, or widow of a son, or the husband of a daughter, or any child or children adopted as such in conformity with the laws of the state of New York, or to any person to whom the deceased for not less than ten years prior to death stood in the mutually acknowledged relation of a parent, or to any lineal descendant born in lawful wedlock; in every such case the rate of such tax shall be one dollar on every hundred dollars of the clear market value of such property, and at and after the same rate for every less amount, provided that an estate which may be valued at a less sum than ten thousand dollars shall not be subject to any such duty or tax; but if such beneficial interest is to or in land or real estate in this state, such interest shall be exempt from taxation under this section. In all other cases, the rate of tax shall be five dollars on each and every hundred dollars of the clear market value of all property, and at and after the same rate for any less amount, provided that an estate which may be valued at any sum less than five hundred dollars shall not be subject to any such duty or tax.

This section amends section 1 of chap. 713 of 1887. The main change consists in making the beneficial interest to any personal property or income therefrom, which shall pass to or for the use of any father, mother, husband, wife, child, brother, sister, wife or a widow· of a son, or the husband of a daughter, or any child or children adopted as such in conformity with the laws of the state of New York, or to any person to whom the deceased, for not less than ten years prior to death, stood in the mutually acknowledged relation of a parent, or to any lineal descendant born in lawful wedlock, liable to a tax at the rate of one dollar on every hundred dollars, etc., where the estate is valued at ten thousand dollars and upwards.

But a beneficial interest to or in land or real estate, in such case, is exempt from taxation under this section.